**UNITED STATES of America,**

v.

**Daniel O. TEYIBO, a/k/a "Daniel O. Teyido," a/k/a "Richard K. Gant," a/k/a "Samuel O. Ajao," a/k/a "Jack Renfro," Defendant.**

No. 93 Cr. 698 (SWK).

United States District Court, S.D. New York.

Feb. 14, 1995.

---

Mary Jo White, U.S. Atty., S.D.N.Y., by Asst. U.S. Attys. Amy E. Millard and Seth C. Farber, New York City, for U.S.

Daniel O. Teyibo, pro se.

## *MEMORANDUM OPINION AND ORDER*

KRAM, District Judge.

In this criminal action charging defendant Daniel O. Teyibo, a/k/a "Daniel O. Teyido," a/k/a "Richard K. Gant," a/k/a "Samuel O. Ajao," a/k/a "Jack Renfro" ("Teyibo") with nine counts of wire fraud and eight counts of securities fraud, Teyibo moves for an order suppressing all evidence, dismissing the indictment and releasing the grand jury minutes. The Government opposes Teyibo's motions. For the reasons set forth below, Teyibo's motions are denied.

### BACKGROUND

#### I. The Civil Proceeding

##### A. The Informal Inquiry

In mid–1991, the Securities and Exchange Commission (the "SEC") initiated an infor-

mal inquiry [1] concerning the activities of Teyibo and several entities he purported to represent, including JFM Government Securities, Inc. ("JFM Government") and First African Trust Corporation ("First African"). According to the Government, on July 15, 1991, Scott A. Cook ("Cook"), a staff attorney at the SEC, sent a letter to Teyibo requesting that he "voluntarily provide certain information and documents" in connection with the investigation. *See* letter from Cook to Teyibo of 7/15/91, annexed to the Affidavit of Amy E. Millard, sworn to on Dec. 5, 1994 (the "Millard Aff.") as Exh. "A." The letter cautioned Teyibo as follows: "Please understand that you have the right to be represented by counsel in connection with this matter." *Id.* Cook also enclosed a copy of SEC Form 1662, a document providing information to individuals of whom such requests to supply information have been made. *See* SEC Form 1662, annexed to the Millard Aff. as Exh. "B." SEC Form 1662 states, in pertinent part:

*Fifth Amendment and Voluntary Testimony.* Information you give may be used against you in any federal, state, local or foreign administrative, civil or criminal proceeding brought by the Commission or any other agency. You may refuse, in accordance with the rights guaranteed to you by the Fifth Amendment to the Constitution of the United States, to give any information that may tend to incriminate you or subject you to a fine, penalty or forfeiture.

*Id.* at 1–2 (emphasis in original). SEC Form 1662 provides further:

*Routine Uses of Information.* The Commission often makes its files available to other governmental agencies, particularly United States Attorneys and state prosecutors. There is a likelihood that information supplied by you will be made available to such agencies where appropriate.

*Id.* at 3 (emphasis in original). With respect to a subject's right to counsel, SEC Form 1662 states:

*Counsel.* You have the right to be accompanied, represented and advised by counsel of your choice. Your counsel may advise you before, during and after your testimony; question you briefly at the conclusion of your testimony to clarify any of the answers you give during testimony; and make summary notes during your testimony solely for your use. If you are accompanied by counsel, you may consult privately.

*Id.* at 1 (emphasis in original). Neither Teyibo nor the entities he purported to represent responded to the SEC's voluntary requests for information.

According to the Government, on February 27, 1992, Robert Skrzypczak ("Skrzypczak"), another SEC staff attorney, sent a second letter to Teyibo again requesting information. The letter was again accompanied by a copy of SEC Form 1662. The next day, the SEC received a letter from Teyibo in which he stated that, "after consultation with our counsel, . . . we have decided not to provide you with any information." *See* letter from Teyibo [2] to Skrzypczak of Feb. 28, 1992, annexed to the Affidavit of Robert Skrzypczak, sworn to on Jan. 13, 1995 (the "Skrzypczak Aff.") as Exh. "3."

On March 2, 1992, Teyibo telephoned Skrzypczak at the SEC to request that the SEC cease its investigation. According to the Government, Skrzypczak asked Teyibo if he was represented by counsel and Teyibo responded that although he had retained counsel, he would not disclose the name of his attorney to the SEC. *See* Skrzypczak Aff. at ¶ 10.

## B. The Formal Investigation

On March 4, 1992, the SEC issued an order initiating a formal investigation. In connection with the commencement of the formal investigation, the SEC served Teyibo and the entities represented by him with subpoenas to produce documents and provide

---

**1.** The SEC engages in two types of investigations: informal inquiries and formal investigations. During informal inquiries, the SEC can neither issues subpoenas nor compel testimony. Once a formal investigation commences, however, the SEC may use these devices in furtherance of an investigation.

**2.** In fact, the letter states that it is from "Daniel O. Teyido."

deposition testimony. Shortly thereafter, Teyibo informed the SEC that he had retained the law firm of Covington & Burlington to represent him during the SEC investigation. *See id.* at ¶ 13. Upon investigation, however, the SEC learned that Covington & Burlington had not been retained by Teyibo. *See id.* at ¶ 14. Thereafter, Teyibo retained the law firm of Bailey, McClure & Williams to represent him. Approximately one month later, however, the firm informed the SEC that it no longer represented Teyibo. In the interim, the SEC granted three requests to extend the return date for the production of documents as well as the date for Teyibo's appearance for a deposition.

## C. The Civil Complaint

On December 23, 1992, the SEC filed a civil complaint against Teyibo and JFM Government in the United States District Court for the District of Maryland, seeking a permanent injunction preventing defendants from continuing to engage in practices in violation of Section 17(a) of the Securities Act of 1933 and Sections 10(b) and 15C of the Securities Exchange Act of 1934 (the "civil action"). *See* Complaint for Permanent Injunction and Other Relief, dated Dec. 23, 1992, annexed to the Millard Aff. as Exh. "C." Specifically, the complaint alleged that Teyibo and JFM Government "engaged in a scheme to defraud national and foreign broker-dealer counterparties in trades of U.S. Treasury notes and bonds." *Id.* at 4. The complaint alleged further that Teyibo's scheme involved accepting profits from successful transactions with broker-dealers while failing to settle losses from failed transactions. *Id.* at 5. Finally, the complaint asserted that Teyibo held himself out as a dealer in government securities without registering with the SEC. *Id.* Shortly thereafter, on February 12, 1993, United States District Judge Joseph Young issued a temporary restraining order and ordered a freeze of Teyibo's assets. *See* Temporary Restraining Order, annexed to the Millard Aff. as Exh. "D," at 6.

## D. The March 3 Teleconference

On March 3, 1993, United States District Judge Benson Everett Legg ("Judge Legg") held a teleconference in the civil action (the "March 3 Teleconference"). Several issues were raised at the March 3 Teleconference, including Teyibo's attempt to retain counsel and the SEC's desire to schedule a deposition for Teyibo. According to the Government, Judge Legg indicated to Teyibo that he could use funds to retain counsel from his frozen assets so long as he made a written proffer stating which assets he would liquidate, where the funds came from and for what purposes they would be used. After Teyibo rejected these conditions, Judge Legg ordered Teyibo to appear at the SEC's offices in Washington, D.C. on March 4, 1993 for a scheduled deposition (the "March 3 Order").

According to Teyibo, during the March 3 Teleconference, Judge Legg advised him that he should provide evidence to the SEC because, in his view, there was "no criminality whatsoever" in Teyibo's activities. *See* Affidavit of Daniel O. Teyibo, sworn to on Nov. 18, 1994 (the "Teyibo Aff.") at ¶ 10. Teyibo argues that this statement "duped" him into providing potentially incriminating evidence to the Government. According to SEC attorney Skrzypczak, a participant in the March 3 Teleconference, however, Judge Legg did not so inform Teyibo. *See* Skrzypczak Aff. at ¶ 26 n. 21; Millard Aff. at ¶ 20.

## E. The Deposition

Subsequently, on March 4 and March 5, 1993, Teyibo appeared at the SEC offices in Washington, D.C., without an attorney, and provided deposition testimony as well as certain documents requested by the SEC. Teyibo alleges that he was coerced into producing evidence at the deposition. Specifically, Teyibo claims that:

At the deposition I presented about a six inch stack of private documents and records to the SEC pursuant to the Court order. Furthermore, during the depositions I made repeated requests to stop the proceedings until such time that I could retain counsel proficient in securities laws. However, [the] SEC refused and insisted that the proceedings continues [sic] be-

cause the district court ordered me to appear and testify without counsel.

*See* Teyibo Aff. at ¶ 11.

The Government disputes Teyibo's account of the circumstances surrounding the deposition. Specifically, the Government alleges that Teyibo freely provided deposition testimony on March 4, 1993 and voluntarily returned the following day to complete the examination. Moreover, although Teyibo requested an adjournment of the proceeding on March 5, 1993, the SEC determined not to accede to this request on the ground that the March 3 Order prevented any adjournment of the proceedings.

### F. The Judgment

On March 12, 1993, Judge Legg entered a preliminary injunction against Teyibo and ordered that Teyibo's assets remain frozen. *See* Preliminary Injunction Order, annexed to the Millard Aff. as Exh. "E." Subsequently, on February 2, 1994, a final judgment was entered against Teyibo and JFM Government, finding defendants "jointly and severally liable for disgorgement of all of their trading profits and money losses avoided in connection with their transactions." *See* Final Judgment, annexed to the Millard Aff. as Exh. "F," at 8. Accordingly, the court ordered Teyibo and JFM Government to disgorge the sum of $823,275.81 plus $309.83 per day for each day after December 31, 1993 up to the entry of judgment plus post-judgment interest. *Id.* Additionally, the court imposed a civil penalty, pursuant to 15 U.S.C. § 78u(d)(3), in the amount of $100,-000.00, representing "the costs (in part) to [the SEC] in investigating and prosecuting this civil action." *Id.* at 11. On December 29, 1994, the Fourth Circuit Court of Appeals affirmed the decision of the District Court. *See SEC v. Teyibo*, Nos. 94–1280, 94–1435, 94–1451 and 94–1515, 1994 WL 717552 at *1, 1994 U.S.App. LEXIS 36705 at *3 (4th Cir. Dec. 29, 1994).

### II. The Criminal Proceeding

In late February 1992, the United States Attorney's Office for the Southern District of New York (the "United States Attorney's Office") learned about the SEC's investigation into Teyibo's activities. Subsequently, the United States Attorney's Office commenced a grand jury investigation.

On August 19, 1993, the grand jury returned a seventeen count indictment, charging Teyibo with nine counts of wire fraud, in violation of 18 U.S.C. §§ 2 and 1343, and eight counts of securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. § 240.10b–5 and 18 U.S.C. § 2. The indictment alleges that:

> From in or about 1991, up to and including the date of the filing of this Indictment, [Teyibo] made false and misleading statements and representations to broker-dealer firms in New York, New York and elsewhere, and provided them with various documents, including false, fictitious and bogus financial statements of various entities he purported to represent, to induce the broker-dealers to trade United States securities with him, for the purpose of enriching himself with securities trading profits without paying for all trading losses.

*See* Indictment at ¶ 2.

On August 24, 1993, Teyibo appeared before Magistrate Judge Nina Gershon, who set the following the bail conditions: (1) a $500,000 personal recognizance bond secured by $100,000 cash or property, co-signed by five financially responsible persons, including Teyibo's wife; (2) Pretrial Services is to maintain strict supervision; (3) Teyibo must surrender his passport; and (4) officials in Nigeria and Ghana are to be notified that Teyibo is not permitted to travel outside the United States. As Teyibo has not posted bail, he has been incarcerated since the date of his arrest.

On September 13, 1993, this Court held an initial pre-trial conference in the present action. At the September 13, 1993 conference, Teyibo indicated that he was dissatisfied with his appointed counsel, Cary Bricker of the Legal Aid Society, Federal Defenders Division, and that he intended to hire private counsel. *See* Tr. of 9/13/93 conference, annexed to the Millard Aff. as Exh. "G," at 3–4, 8. At that time, Teyibo also stated that he wished to appeal the bail conditions set by

the Magistrate Judge. *Id.* at 4. The Government similarly informed the Court that it objected to the conditions of bail and indicated that it intended to seek a revocation of bail. *Id.* at 6–7. The Court set down a bail hearing for September 22, 1993 and suggested to Teyibo that he accept the appointment of new counsel for purposes of the hearing. *Id.* at 9.

On September 22, 1993, at a pre-trial conference, Teyibo expressed his desire to use a portion of his frozen assets in order to hire a private lawyer. *See* Tr. of 9/22/93 conference, annexed to the Millard Aff. as Exh. "H," at 2. Defense counsel advised the Court of the possibility that the District Court in Maryland would release some of Teyibo's assets for the purpose of allowing him to hire private counsel. *Id.* at 3. Consequently, the Court adjourned the hearing to afford Teyibo "the opportunity to be represented by counsel of his own choice." *Id.*

On November 4, 1993, the Court again attempted to hold a bail hearing, at which time Teyibo informed the Court that he was planning to retain two attorneys "very soon" and that he was "very close to finalizing [an] agreement." *See* Tr. of 11/4/93 conference, annexed to the Millard Aff. as Exh. "I," at 4. The Court adjourned the bail appeal in light of the importance of the hearing and Teyibo's statement that the retention of private counsel was forthcoming. *Id.* at 4–5.

At a pre-trial conference held on December 9, 1993, the Court again recommended to Teyibo that he accept appointed counsel. *See* Tr. of 12/9/93 conference, annexed to the Millard Aff. as Exh. "J," at 2. After Teyibo refused appointed counsel, the Court advised him of the dangers of proceeding *pro se* in a case involving complex charges and serious penalties. *Id.* at 3. The Court then ordered that standby counsel be appointed to assist Teyibo with the bail appeal. *Id.* at 4. The Court set down the bail appeal for a hearing in January 1994. *Id.* Although Teyibo requested an earlier hearing date, the Court determined that appointed counsel would re-

quire time to become familiar with the case. *Id.* at 4–5.

Thereafter, Anthony Ricco ("Ricco") was appointed as standby counsel to assist Teyibo. On February 16, 1994, the Court conducted a bail hearing to determine whether bail should be revoked or modified.[3] *See* Tr. of 2/16/94 Hr'g, annexed to the Millard Aff. as Exh. "L." At the conclusion of oral argument, Teyibo informed the Court that he was not prepared to determine whether he would accept Ricco and his partner, Gary Villanueva, as standby counsel for purposes of filing a pre-trial motion and for trial. *Id.* at 16. Teyibo again notified the Court that he had held discussions with a private attorney whom he hoped to retain. *Id.* at 17. The Court scheduled a pre-trial conference for March 2, 1994 and advised Teyibo that he should decide whether the Court should appoint counsel. *Id.* at 18.

On March 2, 1994, the Court held another pre-trial conference, at which time the Court appointed Ricco as counsel for Teyibo. *See* Tr. of 3/2/94 conference, annexed to the Millard Aff. as Exh. "M," at 7. Ricco requested a four or five week period to conduct additional discovery and to determine whether any pre-trial motions were warranted. *Id.* Thereafter, at a pre-trial conference on April 13, 1994, the Court granted defense counsel's application for additional time to conduct discovery and file a motion. *See* Tr. of 4/13/94 conference, annexed to the Millard Aff. as Exh. "N," at 2–3. Subsequently, at a pre-trial conference held on May 25, 1994, the Court set a briefing schedule for defense counsel's motions. *See* Tr. of 5/25/94 conference, annexed to the Millard Aff. as Exh. "O," at 2–3.

On July 6, 1994, the Court granted defense counsel's application to postpone the briefing schedule for two weeks on the ground that Teyibo had notified defense counsel that no motion could be filed on his behalf without Teyibo's prior, written approval. *See* July 6, 1994 Order. Subsequently, on August 3, 1994, the Court granted another defense ap-

---

**3.** By Order dated February 22, 1994, the Court affirmed the bail conditions set by Magistrate

Judge Gershon.

plication to adjourn the briefing schedule. *See* August 3, 1994 Order.

At a pre-trial conference held on October 5, 1994, Ricco informed the Court that, although the motion was ready to file, he was unable to do so because Teyibo had refused to provide his approval. *See* Tr. of 10/5/94 conference, annexed to the Millard Aff. as Exh. "P," at 8–9. Accordingly, with Teyibo's consent, the Court directed Teyibo to file his motion *pro se*, with assistance of counsel if he desired, within thirty days. *Id.* at 18.

In November 1994, Teyibo filed the present motion,[4] seeking an order suppressing all evidence on the ground that his Fifth Amendment due process rights have been violated and dismissing the indictment (1) based on a violation of his constitutional right to a speedy trial; (2) for failure properly to charge all elements of the offense; (3) on the ground that he did not receive fair notice that his conduct constituted a crime; (4) on double jeopardy grounds; (5) or releasing the grand jury minutes based on prosecutorial misconduct.

## III. The Hearing

On February 2, 1995, the Court held an evidentiary hearing to resolve several factual disputes possibly bearing on Teyibo's motion to suppress evidence (the "Hearing"). Specifically, the testimony elicited at the Hearing addressed the following factual disputes: (1) the circumstances surrounding Teyibo's deposition appearance at the SEC offices in March 1993 without counsel, including whether his testimony was freely given; (2) the statement allegedly made by Judge Legg at the March 3 Teleconference; and (3) alleged contact between the United States Attorney's Office and the SEC.

At the Hearing, SEC staff attorney Skrzypczak testified that he or SEC staff attorney Cook sent various correspondence to Teyibo during the SEC's informal inquiry. *See* Tr. of Hearing, at 13–22. Specifically, on

July 15, 1991, Cook sent a letter with a copy of SEC Form 1662 to Teyibo, JFM Government and First African by certified mail, requesting that the parties voluntarily provide certain information. *Id.* at 13–15. The Government also presented copies of the three letters at the Hearing, included copies of the certified mail receipts signed by Teyibo. *See* Gov't's Exhs. 1–3. Skrzypczak also testified that he sent Teyibo another letter on February 27, 1992, again requesting information. *See* Tr. of Hearing, at 19–20. Skrzypczak stated that SEC Form 1662 was again enclosed in the February 27, 1992 letter, pursuant to SEC standard policy. *Id.* at 20.

Skrzypczak testified further that, on March 7, 1992, he sent *subpoenas duces tecum* to Teyibo with accompanying copies of SEC Form 1662, by certified mail, requiring Teyibo to provide information in connection with the SEC's formal investigation. *Id.* at 25. Although some of the letters were returned unopened, Teyibo signed the return receipt on at least three of the March 7, 1992 letters. *Id.* at 28; Gov't Exhs. "8A," "8B" and "8C."

With respect to the March 3 Teleconference, the Government presented an affirmation signed by Judge Legg which reads, in part:

I recall that the general subject matter of the March 3, 1993 telephone conference was the freeze imposed upon the defendant Daniel O. Teyibo's assets. During that telephone conference, there was discussion about modifying the asset freeze in order to permit Mr. Teyibo to expend funds for his representation. I indicated to Mr. Teyibo that, if he could establish that certain overseas assets were fresh assets, I would entertain the possibility of modifying the injunction in order to permit him access to these assets in order to retain counsel.... At no time did I tell Mr. Teyibo that his actions involved no criminality or that he faced no criminal liability.

---

4. In fact, Teyibo filed three memoranda of law. The first memorandum of law was received on November 10, 1994, but was unsigned and included his own unsigned affidavit. Teyibo submitted a second memorandum of law at a pretrial conference on November 17, 1994. Finally, on November 25, 1994, the Court received a third memorandum of law accompanied by Teyibo's signed affidavit ("Def.'s Mem."). For purposes of this motion, the Court shall consider all three memoranda. Citations are to the November 25, 1994 submission.

Affirmation of Judge Benson Everett Legg, sworn to on Jan. 31, 1995, at ¶¶ 3–4.

Skrzypczak's testimony confirmed Judge Legg's recollection of the March 3 Teleconference. Specifically, Skrzypczak testified that he participated in the conference and that Judge Legg offered to release portions of Teyibo's assets in exchange for a full accounting of his assets, but that Teyibo declined the option. *See* Tr. of Hearing, at 41. As for Teyibo's allegation that Judge Legg informed him during the March 3 Teleconference that there was "no criminality whatsoever" in Teyibo's alleged behavior, Skrzypczak testified that Judge Legg made no such statement. *Id.* at 42–43.

Skrzypczak also testified about the circumstances surrounding Teyibo's appearance at the SEC offices on March 4–5, 1992 for his deposition. *Id.* at 43–45. According to Skrzypczak, the deposition began on March 4, recessed for lunch, continued in the afternoon and adjourned until the following day. *Id.* at 43. When the deposition reconvened the following day, Teyibo asked to adjourn the proceedings on the grounds that he wanted to locate certain corporate documents so that he could better respond to the questions and he wanted to see his father-in-law who was sick. *Id.* at 45. The SEC refused the request to adjourn the deposition, however, in light of the March 3 Order requiring Teyibo to attend the deposition. *Id.* Skrzypczak also testified that at no time during the deposition did Teyibo assert his Fifth Amendment right not to incriminate himself. *Id.* at 44. Moreover, the deposition took place in a conference room and Teyibo had access to a telephone throughout the proceedings. *Id.* at 43, 45.

Finally, Skrzypczak testified that the SEC and the United States Attorney's Office followed standard procedures in pursuing separate civil and criminal investigations. *Id.* at 23–24. According to Skrzypczak, no one at the United States Attorney's Office ever ad-

vised the SEC how to proceed with the civil case. *Id.* at 23. Moreover, the SEC never was informed that the United States Attorney's Office had convened a grand jury to investigate allegations of fraud against Teyibo. *Id.* at 24. Further, although an attorney from the United States Attorney's Office in Maryland appeared as local counsel in the civil action, trial strategy was not discussed and the United States Attorney's Office did not participate in any meaningful way.[5] *Id.* at 34–35.

## DISCUSSION

### I. Due Process

Teyibo argues that the Court should suppress all evidence against him on the ground that the Government has violated his Fifth Amendment due process rights. Specifically, Teyibo argues that his rights were violated as a result of (1) the Government's pursuit of evidence during the civil investigation for use in the criminal proceeding; (2) the Government's failure to provide the required *Miranda* warnings at his deposition; and (3) Judge Legg's alleged statement during the civil action that there was no criminality in Teyibo's actions.[6] The Court disagrees.

 The prosecution may use evidence acquired in a civil action in a subsequent criminal proceeding unless the defendant demonstrates that such use would violate his constitutional rights or depart from the proper administration of criminal justice. *United States v. Unruh*, 855 F.2d 1363, 1374 (9th Cir.1987) (citing *United States v. Kordel*, 397 U.S. 1, 12–13, 90 S.Ct. 763, 769–70, 25 L.Ed.2d 1 (1970) ("*Kordel*"), *cert. denied sub nom. Forde v. United States*, 488 U.S. 974, 109 S.Ct. 513, 102 L.Ed.2d 548 (1988)). In *Kordel*, the Supreme Court, in *dicta*, set forth certain circumstances that may lead to a finding that a defendant's right to due process has been violated. *See United States*

---

5. Skrzypczak testified that an appearance by a United States Attorney was required pursuant to the District Court for the District Court of Maryland's rule that attorneys not admitted in the District Court for the District Court of Maryland appear through local counsel. *See* Tr. of Hearing, at 34.

6. Read liberally, Teyibo's affidavit suggests that his Due Process claim is based in part on the allegation that the SEC coerced him into providing evidence during the civil proceedings. Accordingly, the Court shall address this claim below.

*v. Kordel,* 397 U.S. at 12, 90 S.Ct. at 769–70. These circumstances include cases in which (1) the Government pursued a civil action solely to obtain evidence for a criminal prosecution; (2) the Government failed to advise the defendant during the civil proceeding that it is contemplating criminal prosecution; (3) the defendant was without counsel; (4) the defendant reasonably feared prejudice from pre-trial publicity or other unfair injury; or (5) other special circumstances suggest that the criminal prosecution is unconstitutional or improper. *Id.*

■ In the present case, the Court finds that Teyibo's due process rights have not been violated. First, the evidence presented at the Hearing indicates that this was not a case in which the Government pursued a civil action solely to obtain evidence for a criminal prosecution. The SEC began its investigation in mid–1991, several months before the United States Attorney's Office began its own inquiry. Moreover, the SEC continued to pursue the civil action for more than two years, ultimately receiving a judgment in February 1994. The record demonstrates that the SEC pursued its own independent investigation of Teyibo's activities and did not consult with the United States Attorney's office in any substantive way. Similarly, the United States Attorney's Office properly conducted its own investigation and maintained grand jury secrecy as is required by federal law. Accordingly, Teyibo's contention that the SEC and the United States Attorney's Office conspired together to accumulate evidence against him for use in a criminal case is without merit.

Second, the defendant received sufficient notice from the SEC that any information could be used against him in a subsequent criminal proceeding. In fact, SEC Form 1662 stated in no uncertain terms that the Government's request for information could be refused pursuant to the Fifth Amendment's protection against compelled self-incrimination. SEC Form 1662 cautioned further of the possibility that the information elicited would be transmitted to the United States Attorney's Office or other federal authorities for criminal prosecution. Teyibo's claim that he never received any such warn-ings prior to appearing for his deposition is belied by the evidence presented at the Hearing, including the credible testimony of Skrzypczak and signed certified mail receipts of correspondence and subpoenas, including copies of SEC Form 1662, sent by the SEC to Teyibo and the entities he represented.

Third, with respect to Teyibo's claim that Judge Legg informed him that he saw "no criminality whatsoever" in his actions, the Court finds that this statement did not occur. In reaching this conclusion, the Court relies on the evidence presented at the Hearing, namely Judge Legg's affirmation and Skrzypczak's credible testimony denying any such statement.

Fourth, although Teyibo was not represented by counsel at the time he gave his deposition to the SEC, this factor alone does not amount to a violation of the defendant's constitutional rights. SEC Form 1662 notified Teyibo that he had the right to retain counsel during the civil investigation. Moreover, rather than hindering Teyibo's effort at acquiring representation, the SEC encouraged Teyibo by notifying him of his right to counsel in SEC Form 1662 and agreeing to several delays in the civil investigation until he could retain counsel. Further, Teyibo's contention that the assets freeze prevented him from retaining counsel is meritless as Teyibo in fact declined Judge Legg's offer to release certain assets in exchange for an *accounting of the assets' source and the pro-posed use of the funds.*

■ Fifth, although Teyibo suggests that the deposition testimony and other evidence he supplied at the SEC offices were somehow coerced by the SEC, the evidence negates such a finding. Thus, although the March 3 Order required Teyibo to appear at the SEC offices on March 4, 1992 for a deposition, Teyibo was not prevented from asserting his Fifth Amendment right against self-incrimination. *See Minnesota v. Murphy,* 465 U.S. 420, 427, 104 S.Ct. 1136, 1142, 79 L.Ed.2d 409 (1984) (" '[I]n the ordinary case, if a witness under compulsion to testify makes disclosures instead of claiming the [Fifth Amendment] privilege, the government has not 'compelled' him to incriminate himself.' ") (quoting *Garner v. United States,* 424 U.S.

648, 654, 96 S.Ct. 1178, 1182, 47 L.Ed.2d 370 (1976)); *see also United States v. Jenkins,* 785 F.2d 1387, 1393 (9th Cir.) (rejecting defendant's argument that his deposition testimony given under subpoena should be suppressed, finding instead that "an obligation to appear and testify truthfully does not constitute compulsion to give incriminating testimony"), *cert. denied sub nom. Prock v. United States,* 479 U.S. 855, 107 S.Ct. 192, 93 L.Ed.2d 125 (1986). Here, as in *Kordel,* Teyibo's "failure at any time to assert the constitutional privilege leaves him in no position to complain now that he was compelled to give testimony against himself." *United States v. Kordel,* 397 U.S. at 10, 90 S.Ct. at 768. Additionally, it is readily apparent that Teyibo's appearance at the SEC's office was routine and there is no evidence supporting Teyibo's claim that any other circumstances created a coercive environment.[7]

Under these circumstances, the Court finds that the Government did not violate Teyibo's constitutional rights by simultaneously pursuing civil and criminal actions against him. Nor were Teyibo's rights violated when he voluntarily provided information to the SEC without the assistance of counsel during the civil proceedings. Accordingly, Teyibo's motion to suppress the evidence obtained during the civil investigation is denied.[8]

## II. Right to Speedy Trial

Teyibo next argues that the indictment should be dismissed on the ground that his constitutional right to a speedy trial has been violated. Specifically, Teyibo contends that the Government's delay in seeking an indictment as well as the delay in scheduling a trial after the indictment constitute a violation of his Sixth Amendment right to a speedy trial. Teyibo's argument does not withstand scrutiny.

### A. Preindictment Delay

It is well-established that the Sixth Amendment right to a speedy trial does not apply to preindictment delay. *United States v. Valenzuela–Bernal,* 458 U.S. 858, 868, 102 S.Ct. 3440, 3447, 73 L.Ed.2d 1193 (1982); *United States v. Marion,* 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468[1] (1971); *United States v. Elsbery,* 602 F.2d 1054, 1058 (2d Cir.), *cert. denied,* 444 U.S. 994, 100 S.Ct. 529, 62 L.Ed.2d 425 (1979). "The primary guarantee a citizen possesses against stale or long-delayed criminal charges being made against him is the legislatively enacted statute of limitations." *United States v. Birney,* 686 F.2d 102, 105 (2d Cir.1982). The Supreme Court has held, however, that a preindictment delay may constitute a violation of the Due Process Clause of the Fifth Amendment under certain circumstances. *See United States v. Lovasco,* 431 U.S. 783, 788, 97 S.Ct. 2044, 2047–48, 52 L.Ed.2d 752 (1977); *United States v. Marion,* 404 U.S. at 324, 92 S.Ct. at 465. To establish that an indictment should be dismissed because of preindictment delay, the defendant bears a "heavy burden," *United States v. Elsbery,* 602 F.2d at 1059, of demonstrating that the delay "caused substantial prejudice to [the] right[ ] to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." *United States v. Marion,* 404 U.S. at 324, 92 S.Ct. at 465.

Teyibo has failed to prove either substantial prejudice or that the delay was intentional. With respect to prejudice, although the defendant asserts that the preindictment delay caused the loss of potential witnesses and critical records and documents, he fails to specify what evidence is lost and how it may have been relevant to his defense. The defendant's naked assertion that the delay in

---

**7.** As for Teyibo's claim that the evidence should be suppressed on the ground that he did not receive any *Miranda* warnings prior to testifying at the deposition, this contention is frivolous as Teyibo neither was in custody nor could reasonably have believed himself to be in custody. *See United States v. Mitchell,* 966 F.2d 92, 98 (2d Cir.1992) (stating that *Miranda* warnings are only required when the defendant is in custody) (citing *Beckwith v. United States,* 425 U.S. 341,

346–47, 96 S.Ct. 1612, 1616–17, 48 L.Ed.2d 1 (1976)).

**8.** Teyibo also appears to argue that evidence obtained from sources other than the SEC should be suppressed. Teyibo neither indicates to which evidence he is referring nor establishes any basis to suppress any such additional evidence. Accordingly, this motion is also denied.

seeking an indictment caused the loss of evidence is insufficient to show substantial prejudice. *See United States v. Doerr,* 886 F.2d 944, 964 (7th Cir.1989) (stating that " '[a] defendant must do more than allege that a particular witness is no longer available and that the witness's testimony would have helped the defense' ") (quoting *United States v. Antonino,* 830 F.2d 798, 805 (7th Cir.1987)); *see also United States v. Finkelstein,* 526 F.2d 517, 526 (2d Cir.1975) (finding that actual prejudice is not shown where the defendant is unable to identify the testimony of a lost witness), *cert. denied sub nom. Scardino v. United States,* 425 U.S. 960, 96 S.Ct. 1742, 48 L.Ed.2d 205 (1976); *United States v. Long,* 697 F.Supp. 651, 657 (S.D.N.Y.1988) (stating that the defendant's inability to specify the nature of the lost witness's potential testimony amounts to conjecture that fails to meet the burden of establishing substantial prejudice).[9]

The defendant also has failed to demonstrate that the Government's delay was part of an intentional attempt to gain a tactical advantage. In fact, Teyibo offers no proof other than his own bald assertion that the Government made a "deliberate choice" in pursuing the civil case before pursuing the criminal action. Rather, the Court finds that, based on the complex nature of the allegations, the Government properly waited until the evidence indicated that criminal prosecution was warranted. *See United States v. Lovasco,* 431 U.S. at 794, 97 S.Ct. at 2051 (stating that "requiring the Government to make charging decisions immediately upon assembling evidence sufficient to establish guilt would preclude the Government from giving full consideration to the desirability of not prosecuting in particular cases"). As the defendant has failed to prove substantial prejudice and intentional prosecutorial delay, the motion to dismiss the indictment based on preindictment delay is denied.

9. Teyibo also claims that the injunctions and the assets freeze caused substantial prejudice to his defense. Teyibo fails to establish any nexus, however, between the Court's decision to freeze his assets and any preindictment delay in the case at bar. Even if there were such a connection, however, the injunctions merely forbid the commission of illegal activities. Moreover, the asset freeze has not prevented access to counsel as appointed counsel has been available since the date of Teyibo's arrest.

### B. Postindictment Delay

■ The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy ... trial." U.S. Const. amend. VI. To determine whether a defendant's Sixth Amendment right to a speedy trial has been violated, the court must engage in a two-step inquiry. *Doggett v. United States,* —— U.S. ——, ——, 112 S.Ct. 2686, 2690, 120 L.Ed.2d 520 (1992). First, the court must determine whether the interval between the indictment and trial is "presumptively prejudicial." *Id.* Second, the court must employ a balancing test of several relevant factors, including: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of the right; and (4) prejudice to the defendant. *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972) ("*Barker*"). None of these factors is necessary to a finding that a defendant's Sixth Amendment right has been violated. *Id.* at 533, 92 S.Ct. at 2193. Rather, the court must consider these factors together and make a determination on a case-by-case basis. *Id.*

■ In the present case, as the delay between indictment and trial is approximately eighteen months, Teyibo has demonstrated that the delay is "presumptively prejudicial." *See United States v. Vassell,* 970 F.2d 1162, 1164 (2d Cir.) (suggesting that there is a general consensus that a delay over eight months is presumptively prejudicial), *cert. denied sub nom. Moore v. United States,* —— U.S. ——, 113 S.Ct. 627, 121 L.Ed.2d 559 (1992); *see also Doggett v. United States,* —— U.S. at —— n. 1, 112 S.Ct. at 2691 n. 1 (stating that the lower courts generally find presumptive prejudice for a delay "at least as it approaches one year"). Nonetheless, Teyibo's claim fails in light of the application of the four *Barker* factors.

First, with respect to the length of delay, an eighteen-month delay is considerably shorter than the delays in other cases in

which courts have found no Sixth Amendment violation. *See United States v. Vasquez,* 918 F.2d 329, 338 (2d Cir.1990) (twenty-six month delay did not violate right to speedy trial), *cert. denied sub nom. Tanner v. United States,* 502 U.S. 1102, 112 S.Ct. 1190, 117 L.Ed.2d 432 (1992); *United States v. McGrath,* 622 F.2d 36, 41 (2d Cir.1980) (twenty-four month delay did not violate right to speedy trial); *United States v. Cyphers,* 556 F.2d 630, 636 (2d Cir.) (thirty-three month delay did not violate right to speedy trial), *cert. denied,* 431 U.S. 972, 97 S.Ct. 2937, 53 L.Ed.2d 1070 (1977); *see also United States v. Beamon,* 992 F.2d 1009, 1013 (9th Cir.1993) (seventeen and twenty month delays did not violate right to speedy trial); *Flowers v. Warden, Connecticut Correctional Inst.,* 853 F.2d 131, 134 (2d Cir.) (no constitutional violation where seventeen-month delay), *cert. denied,* 488 U.S. 995, 109 S.Ct. 563, 102 L.Ed.2d 588 (1988); *Holmes v. Bartlett,* 810 F.Supp. 550, 562 (S.D.N.Y.1993) (no constitutional violation where eighteen-month delay).

Second, the reason for the postindictment delay was due directly to the actions of the defense. Specifically, the trial has been delayed as a result of Teyibo's (1) dissatisfaction with his first appointed counsel, Cary Bricker; (2) requests to hire private counsel before proceeding with a bail hearing; (3) desire to wait and see if any frozen assets would become available to hire private counsel; (4) continued assurances to the Court that private counsel was forthcoming; (5) indecision whether to accept newly appointed counsel or proceed *pro se;* (6) refusal to cooperate with his second appointed counsel, Anthony Ricco; and (7) defense counsel's requests for adjournments to file a pre-trial motion. On this record, the Court finds that the defense alone bears the responsibility for any delay in proceeding to trial. *See United States v. Blanco,* 861 F.2d 773, 778 (2d Cir. 1988) ("A defendant's claim that the government violated her right to a speedy trial is seriously undermined when the defendant, and not the government, is the cause of the delay."), *cert. denied,* 489 U.S. 1019, 109 S.Ct.

1139, 103 L.Ed.2d 200 (1989); *Clark v. Irvin,* 844 F.Supp. 899, 905 (N.D.N.Y.1994) ("Because the delay was not attributable to the prosecution, and there is no indication that the prosecution deliberately delayed the trial, petitioner was not denied his right to speedy trial.")

Finally, the defendant has failed to demonstrate any prejudice as a result of the postindictment delay.[10] Although Teyibo refers to the loss of documents and witnesses necessary to the defense, he fails to describe them with any specificity. *See United States v. Blanco,* 861 F.2d at 780 ("[S]ince delay can just as easily hurt the government's case, [the defendant's] general claim that the delay impaired her defense also lacks force."); *United States v. Perez–Cestero,* 737 F.Supp. 752, 767 (S.D.N.Y.1990) (stating that the mere " 'possibility of prejudice is not sufficient' to tilt the fourth *Barker* factor in [the defendant's] favor") (quoting *United States v. Loud Hawk,* 474 U.S. 302, 315, 106 S.Ct. 648, 656, 88 L.Ed.2d 640 (1986)). Moreover, Teyibo's claim that his incarceration during the delay constitutes prejudice is without merit given the circumstances of the present case. *See United States v. Vasquez,* 918 F.2d at 338 (stating that, although seventeen-month pre-trial incarceration may be considered in the assessment of prejudice, it is not sufficient to establish a constitutional violation in all circumstances); *Flowers v. Warden, Connecticut Correctional Inst.,* 853 F.2d at 133–34 (same). Accordingly, Teyibo's motion to dismiss the indictment based on a Sixth Amendment violation is denied.

### III. Sufficiency of the Indictment

Teyibo also argues that the indictment should be dismissed on the ground that the Government failed to charge all elements of wire and securities fraud. Briefly, with respect to the wire fraud charges, Teyibo claims that the indictment fails to allege: (1) a scheme to defraud anyone of money or property; and (2) that his alleged misrepresentations were material. Teyibo contends further that his conduct is expressly autho-

---

10. Although Teyibo asserted his speedy trial right several times, this fact alone does not support his claim of a constitutional violation. Rather, the fact that he caused the delay and he has failed to demonstrate any prejudice controls in the present case.

rized by 15 U.S.C. § 78 *o*(a)(1). As for the securities fraud charges, Teyibo argues that the indictment fails to allege (1) that he had an independent duty to make disclosures to the broker-dealers with whom he allegedly traded; and (2) the requisite mental state. Teyibo's contentions are not well taken.

## A. Wire Fraud

 To be legally sufficient, an indictment "need do little more than to track the language of the statute charged and state the time and place ... of the alleged crime." *United States v. Grossman*, 843 F.2d 78, 84 (2d Cir.1988) (quoting *United States v. Tramunti*, 513 F.2d 1087, 1113 (2d Cir.), *cert. denied*, 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975)), *cert. denied*, 488 U.S. 1040, 109 S.Ct. 864, 102 L.Ed.2d 988 (1989); *see also United States v. Bagaric*, 706 F.2d 42, 61 (2d Cir.) (stating that an indictment need only track the statutory language), *cert. denied sub nom. Logarusic v. United States*, 464 U.S. 840, 104 S.Ct. 133, 78 L.Ed.2d 128 (1983). The federal wire fraud statute states, in pertinent part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined ... or imprisoned ... or both.

18 U.S.C. § 1343. Therefore, to properly allege wire fraud, the Government must demonstrate (1) a scheme to defraud; (2) money or property; and (3) use of the interstate wires to further the scheme. *See United States v. Victor Teicher & Co., L.P.*, 726 F.Supp. 1424, 1434 (S.D.N.Y.1989); *see also United States v. Mittelstaedt*, 31 F.3d 1208, 1216 (2d Cir.1994) (setting forth parallel elements for federal mail fraud statute).

 The instant indictment properly charges all of the elements of wire fraud. Specifically, the indictment alleges that:

> From in or about 1991, up to and including the date of the filing of this Indictment, in the Southern District of New York and elsewhere, TEYIBO, unlawfully, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, for the purpose of executing said scheme and artifice and attempting to do so, did transmit and cause to be transmitted by means of wire and radio communications in interstate commerce, writings, signs, signals, and sounds, to wit, on or about the dates set forth below TEYIBO made and caused [nine specific wire transmissions].

Indictment at ¶ 65. As the indictment sets out the language of federal wire fraud statute and provides the time and place of each of the nine counts, the Court finds the indictment to be legally sufficient.

Despite the specific language of the indictment, Teyibo argues that it fails to allege a scheme to defraud within the meaning of the wire fraud statute. Specifically, Teyibo contends that the charge is inadequate because "the goal of the plot must be to deprive the broker-dealers of its money or property, not just an inadvertent consequence of it." Def.'s Mem. at 14 (emphasis removed). This argument is without merit, however, as the indictment alleges that Teyibo "made false and misleading statements ... to induce the broker-dealers to trade United States securities with him, for the purpose of enriching himself with securities trading profits without paying for all trading losses." Indictment at ¶ 2.

Teyibo's reliance upon *United States v. Regan*, 713 F.Supp. 629, 636 (S.D.N.Y.1989) ("*Regan*"), is misplaced. In *Regan*, the Court determined that the charges against the defendants lacked a proper "scheme to defraud" allegation on the ground that "a right to honest and faithful performance of contractual obligations is not property for the purposes of the mail and wire fraud statutes." *Id.* (citing *Carpenter v. United States*, 484 U.S. 19, 25–27, 108 S.Ct. 316, 320–21, 98 L.Ed.2d 275 (1987)). In the case at hand, in contrast, Teyibo is charged with a scheme to

defraud several parties of money by shifting his trading losses to them. *See United States v. Harris*, 805 F.Supp. 166, 176 (S.D.N.Y.1992) (rejecting defendant's reliance upon *Regan* on the ground that the defendant was charged with defrauding victims not out of "some intangible right," but rather out of "the quintessential tangible form of property, their money"); *United States v. Walters*, 775 F.Supp. 1173, 1178–79 (N.D.Ill.1991) (distinguishing *Regan* on the ground that the alleged scheme was designed to acquire tangible rather than intangible rights).

▇▇▇▇ Teyibo also argues that the wire fraud counts should be dismissed on the ground that his alleged misrepresentations were not material as a matter of law. Teyibo's argument is contrary to the standard for determining materiality. In brief, a misstated or omitted fact is material "if there is a substantial likelihood that a reasonable [person] would consider it important in making an investment decision." *United States v. Bilzerian*, 926 F.2d 1285, 1298 (2d Cir.) (citing *Basic Inc. v. Levinson*, 485 U.S. 224, 231–32, 108 S.Ct. 978, 983–84, 99 L.Ed.2d 194 (1988); *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976)), *cert. denied*, 502 U.S. 813, 112 S.Ct. 63, 116 L.Ed.2d 39 (1991). As the indictment charges Teyibo with supplying false information to broker-dealers to induce trading activity, the materiality element is properly alleged. *See United States v. Tager*, 788 F.2d 349, 354–55 (6th Cir.1986) (affirming convictions for securities, wire and mail fraud on the ground, in part, that misrepresentations to a broker about a defendant's financial situation designed to transfer risk were material).

▇▇▇ Finally, Teyibo argues that his alleged conduct is expressly declared lawful under 15 U.S.C. § 78 *o*(a)(1). This provision, pertaining to the registration and regulation of brokers and dealers, provides, in relevant part:

It shall be unlawful for any broker or dealer ... to make use of the mails or any means or instrumentality of interstate commerce to effect any transactions in, or to induce or attempt to induce the pur-

chase or sale of, any security ... unless such broker dealer is registered.

15 U.S.C. § 78 *o*(a)(1). The Court finds no language in this provision to contradict the prohibition against the commission of wire fraud as set forth by 18 U.S.C. § 1343. Accordingly, Teyibo's motion to dismiss the wire fraud counts on legal insufficiency grounds is denied.

### B. Securities Fraud

▇▇▇▇ Teyibo similarly contends that the securities fraud charges are legally insufficient. The Court disagrees and finds that the indictment properly alleges each of the elements of securities fraud.

Pursuant to 15 U.S.C. § 78j(b):

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b). To establish securities fraud, the Government must prove that the defendant: (1) employed a device, scheme or artifice to defraud, or made an untrue statement of material fact which made what was said, under the circumstances, misleading, or engaged in an act, practice or course of business that operated, or would operate, as a fraud or deceit upon a purchaser or seller; (2) participated in the scheme to defraud knowingly, willfully and with intent to defraud; and (3) knowingly used, or caused to be used, instrumentalities of interstate commerce in furtherance of the scheme to defraud or fraudulent conduct. *See* 2 L. Sand, T. Siffert, W. Loughlin and S. Reiss, *Modern Federal Jury Instructions: Criminal*, at ¶ 57.03 (1994).

The indictment alleges each of these elements, charging that:

From in or about 1991 up to and including the date of the filing of this Indictment, in the Southern District of New York and elsewhere, the defendant DANIEL O. TEYIBO, unlawfully, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce and the mails, and facilities of national securities exchanges, did use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities by (1) employing devices, schemes and artifices to defraud, (2) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, not misleading, and (3) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon purchasers and sellers of such securities, the investing public and other persons and entities, to wit, TEYIBO made false and misleading statements and representations to broker-dealers in connection with purchases and sales of United States Treasury securities [enumerated in the indictment].

Indictment at ¶ 67. Despite the specific language in the indictment, Teyibo contends that the securities fraud counts should be dismissed. Specifically, Teyibo argues that (1) he had no independent duty to disclose information; and (2) the indictment fails to allege scienter. Both claims are meritless.

First, the indictment does not seek to hold the defendant accountable for the non-disclosure of material facts, but rather for numerous affirmative misrepresentations allegedly made in furtherance of a scheme to defraud. Consequently, Teyibo's reliance upon *Dirks v. SEC*, 463 U.S. 646, 103 S.Ct. 3255, 77 L.Ed.2d 911 (1983) and *Chiarella v. United States*, 445 U.S. 222, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980), is misplaced as those cases dealt with the obligations of fiduciaries to disclose information. Second, the indictment properly alleges an intentional scheme to defraud, thereby satisfying the scienter element of the offense.[11] Accordingly, Tey-

ibo's motion to dismiss the securities fraud counts on legal sufficiency grounds is denied.

## IV. Notice

Teyibo next argues that the indictment should be dismissed on the ground that he did not receive fair notice that his alleged conduct constituted a crime. Briefly, Teyibo contends that it is unclear whether the federal wire and securities fraud statutes apply to individuals other than broker-dealers. The Court finds this argument unpersuasive.

"The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute." *United States v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954). As the Supreme Court explained, this is so that "no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *Id.* Accordingly, the Due Process Clause of the Fourteenth Amendment requires that "the law give sufficient warning that men may conduct themselves so as to avoid that which is forbidden, and thus not lull the potential defendant into a false sense of security, giving him no reason even to suspect that his conduct might be within its scope." *United States v. Herrera*, 584 F.2d 1137, 1149 (2d Cir.1978), *cert. denied sub nom. Alsobrook v. United States*, 449 U.S. 843, 101 S.Ct. 124, 66 L.Ed.2d 51 (1980).

█ Teyibo is charged with violating the federal wire fraud statute, 18 U.S.C. § 1343, and the federal securities fraud statute and regulations, 15 U.S.C. §§ 78j(b) & 78ff and 17 C.F.R. § 240.10b–5, in a scheme to defraud broker-dealers in transactions involving United States Treasury securities. This was allegedly accomplished through a method known as "free riding" in which an investor is able to trade securities with broker-dealers and avoid incurring any trading losses through fraudulent means. The courts consistently have applied the federal wire

---

11. As for Teyibo's remaining claims with respect to the securities fraud counts, the Court finds them to be without merit. Specifically, Teyibo's contentions that United States securities are ex-

empt from margin or credit requirement violations and that the charged conduct does not violate 12 C.F.R., Part 220 are immaterial to the present case.

and securities fraud laws to this conduct. *See, e.g., United States v. Gibbons,* 968 F.2d 639, 641 (8th Cir.1992) (affirming convictions for mail and wire fraud based on free riding scheme); *United States v. Tager,* 788 F.2d at 354–55 (affirming convictions for securities and wire fraud based on free riding scheme); *United States v. Smith,* 727 F.2d 214, 215 (2d Cir.1984) (affirming convictions for mail and wire fraud based on free riding scheme); *United States v. Reed,* 639 F.2d 896, 904–06 (2d Cir.1981) (affirming convictions for securities, mail and wire fraud based on free riding scheme). Teyibo's claim that the statutes fail to provide adequate notice is therefore without merit.

## V. Double Jeopardy

■ Teyibo argues further that the indictment should be dismissed on the ground that a criminal penalty on the heels of the civil judgment against him would constitute a violation of the Double Jeopardy Clause of the Fifth Amendment. This argument is meritless.

■ "The Double Jeopardy Clause protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." *United States v. Halper,* 490 U.S. 435, 440, 109 S.Ct. 1892, 1897, 104 L.Ed.2d 487 (1989). In determining whether a civil sanction constitutes a punishment, the court must determine whether the sanction "serves the goals of punishment." *Id.* at 448, 109 S.Ct. at 1902. Thus, "a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term." *Id.* Accordingly:

> Where a defendant previously has sustained a criminal penalty and the civil penalty sought in the subsequent proceeding bears no rational relation to the goal of compensating the Government for its loss, but rather appears to qualify as 'punishment' in the plain meaning of the word, then the defendant is entitled to an accounting of the Government's damages and

costs to determine if the penalty sought in fact constitutes a second punishment.

*Id.* at 449, 109 S.Ct. at 1902.

In the present case, the Court finds that the final judgment in the civil action did not constitute punishment. Rather, it ordered Teyibo and JFM Government merely to disgorge profits gained and losses avoided that resulted from fraudulent activities. Additionally, the final judgment ordered a civil penalty in the amount of $100,000 to compensate the Government for costs incurred in "investigating and prosecuting" the civil action. Unlike in *United States v. Halper,* 490 U.S. at 440, 109 S.Ct. at 1897, the civil judgment at issue here does not serve any goals of punishment such as retribution or deterrence, but rather forces the Teyibo to forfeit illegally received monetary benefits and reimburse Government costs. Consequently, as the Court finds that the monetary penalty imposed in the civil action is proportionate to the Government's loss, the penalty is not punishment within the meaning of the Double Jeopardy Clause. *See id.* at 446 n. 6, 109 S.Ct. at 1900 n. 6 (stating that the Government's investigative and prosecutorial costs are remedial costs); *S.E.C. v. Bilzerian,* 29 F.3d 689, 696 (C.A.D.C.1994) (rejecting defendant's Double Jeopardy argument and holding that disgorgement is remedial in nature); *United States v. Tilley,* 18 F.3d 295, 300 (5th Cir.1994) (stating that the forfeiture of illegal proceeds "does not punish the defendant because it exacts no price in liberty or lawfully deprived property from him"); *United States v. Traylor,* 978 F.2d 1131, 1132 n. 1 (9th Cir.1992) (finding that disgorgement of funds to be used for restitution does not constitute punishment for Double Jeopardy purposes), *cert. denied,* —— U.S. ——, 113 S.Ct. 1958, 123 L.Ed.2d 662 (1993). Accordingly, Teyibo's motion to dismiss the indictment on Double Jeopardy grounds is denied.

## VI. Prosecutorial Misconduct

Finally, Teyibo argues that the indictment should be dismissed and the grand jury minutes disclosed, or in the alternative inspected *in camera* by the Court, on the ground of prosecutorial misconduct. Specifically, Teyibo claims that the Government misinformed

the grand jury about the applicable federal statutes and his actual conduct.

 Grand jury proceedings are accorded a "presumption of regularity," and an inspection of the minutes is rarely permitted absent specific allegations of prosecutorial misconduct. *United States v. Torres,* 901 F.2d 205, 232–33 (2d Cir.), *cert. denied sub nom. Cruz v. United States,* 498 U.S. 906, 111 S.Ct. 273, 112 L.Ed.2d 229 (1990). The defendant's allegations must be more than mere conclusory assertions or speculation. *United States v. Morgan,* 845 F.Supp. 934, 941 (D.Conn.1994) (citing *United States v. Abcasis,* 785 F.Supp. 1113, 1119 (S.D.N.Y. 1992)). The disclosure of the grand jury minutes therefore must be denied "in all but extraordinary circumstances." *United States v. Morgan,* 845 F.Supp. at 941 (citing *Costello v. United States,* 350 U.S. 359, 364, 76 S.Ct. 406, 409, 100 L.Ed. 397 (1956)).

 Teyibo's vague assertion that the Government misled the grand jury does not present a circumstance warranting the disclosure of the grand jury minutes. Nor is there any showing that the Court should order its own *in camera* inspection of the minutes. *See United States v. Ruiz,* 702 F.Supp. 1066, 1073 (S.D.N.Y.1989) (stating that a "similar showing" is required to establish the need for inspection of the grand jury proceedings by the court) (citing *United States v. Abrams,* 539 F.Supp. 378, 389 (S.D.N.Y.1982)), *aff'd,* 894 F.2d 501 (1990). Accordingly, Teyibo's motion to dismiss the indictment or disclose the grand jury minutes is denied.

## CONCLUSION

For the reasons set forth above, Teyibo's motion for an order suppressing all evidence, dismissing the indictment and releasing the grand jury minutes is denied. The trial shall commence as scheduled on February 21, 1995 at 10:30 a.m. The time between the date of this Memorandum Opinion and Order and February 21, 1995 is hereby excluded from the Speedy Trial Act, pursuant to 18 U.S.C. § 3161h(8)(A), in order to afford the parties the opportunity to consider this Memorandum Opinion and Order prior to the commencement of trial.