**UNITED STATES of America**

v.

**Theodore J. ISAACS et al.**

**No. 71 CR. 1086.**

United States District Court,
N. D. Illinois, E. D.

June 14, 1972.

James R. Thompson, U. S. Atty., Chicago, Ill., Samuel K. Skinner, First Asst. U. S. Atty., Chicago, Ill., Darrell McGowen, Dept. of Justice, Washington, D. C., Steven Kadison, Gary L. Starkman, Steven H. Mora, Asst. U. S. Attys., Chicago, Ill., for government.

Albert E. Jenner, Jr., Thomas P. Sullivan, Jenner & Block, Chicago, Ill., for defendant Isaacs.

William A. Barnett, Chicago, Ill., for defendant Miller.

Edward Bennett Williams, Williams, Connolly & Califano, Washington, D. C., for defendant Kerner.

George F. Callaghan, Chicago, Ill., for defendant Knight.

F. Lee Bailey, Bailey, Alch & Gillis, Boston, Mass., for defendant McInturf.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

For consideration are those motions on which evidentiary hearings were granted following oral arguments on May 17, 1972, and those motions filed after the deadline for preliminary motions agreed to by counsel for all parties, to wit, March 20, 1972.

The motion of defendant Kerner to dismiss the indictment because of the presence of unauthorized persons in the

grand jury room was withdrawn during the hearing on that motion. Judge Kerner identified the former Revenue Agent, T. R. Johnson, whom he had deposed was in the grand jury room in his affidavit in support of his motion. However, he stated Mr. Johnson was not the same man he observed in the grand jury room when he was testifying, but the man who was there resembled Mr. Johnson so closely as to be his identical twin. The motion having been withdrawn, further consideration is unnecessary.

## KERNER'S MOTION TO DISMISS COUNT XV

■ Testimony was heard on Judge Kerner's motion to dismiss Count XV for the Government's destruction of essential evidence. The question presented was whether the destruction of the rough notes made by Internal Revenue Service Special Agents Stufflebeam and Campbell during an interview with Judge Kerner which were incorporated into a memorandum of interview on the day of the interview amounted to an impermissible destruction of evidence in violation of due process. See Killian v. United States, 368 U.S. 231, 82 S.Ct. 302, 7 L.Ed.2d 256 (1961). These notes are particularly important in the instant case because the essence of Count XV is an alleged misrepresentation of fact to federal agents performing an official inquiry. See 18 U.S.C. § 1001.

Both Stufflebeam and Campbell testified that they began the interview by presenting Kerner with a letter informing him that he was the subject of a criminal investigation and by advising him of his fifth amendment rights. Each said that his own notes were key words and phrases chosen to jog his own memory as he prepared a formal memorandum of interview. Each has a personal policy of destroying rough interview notes once the formal memorandum of interview is in final form to avoid duplication of records and because time erases from his memory the meanings he originally attached to the key words.

The Internal Revenue Service leaves the question of destruction of rough interview notes to the individual agent.

Stufflebeam has followed the practice of destroying rough notes for as long as he has worked for the Service. The memorandum of interview quotes the *Miranda* warning as he read it verbatim from a printed card. Stufflebeam cannot tell from the memorandum what portions came from his notes as opposed to his recollection alone. Prior to destroying the rough notes he always compares them with the final draft of the memorandum of interview to assure the completeness and accuracy of the latter. At the time of the interview he had no thought that the memorandum might become the basis of a Section 1001 charge.

Campbell testified that he had never discussed with Stufflebeam whether to retain or destroy their rough interview notes. On reading the memorandum of that interview he said that his rough notes covered the entire memorandum with one or two words keying a whole paragraph. He recalled using key phrases such as "financial institution", "Isadore Brown", and "on recommendation of broker". Campbell has had no prior Section 1001 experience nor did he think of a possible Section 1001 prosecution at the time of the interview, preparation of the memorandum and destruction of his rough notes.

We conclude that the destruction of these interview notes was not a wilful or careless destruction of evidence and that the defendant has not been sufficiently prejudiced to warrant dismissal of Count XV. Accordingly, the motion is denied.

## ISAACS' MOTION TO SUPPRESS

An evidentiary hearing was held on defendant Isaacs' motion to suppress evidence derived from certain interviews with Internal Revenue Special Agents on the ground that they failed to give him a *Miranda* warning when he was a subject of a criminal investigation. See United States v. Dickerson, 413 F.2d 1111 (C.A. 7, 1969). In our memoran-

dum opinion filed May 30, 1972, 347 F. Supp. 743, we limited the issues for this hearing to a determination of when Isaacs was first given a full *Miranda* warning and when he first became the subject of a criminal investigation.

Despite a lengthy, detailed and thorough hearing, the parties failed to present any material fact not previously shown by their affidavits. Their respective positions and the factual disputes are accurately set forth on pages 27–29 of our memorandum of May 30, 1972, which are incorporated herein by reference.

Isaacs testified in minute detail as to the events transpiring at each of the interviews in question. He also produced personal notes of these interviews which he said he made on each occasion. He remained unequivocal in his position that he was never warned of his constitutional rights.

Isaacs is a practicing attorney who graduated from law school some thirty-five years ago. He testified that he had heard of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). We are convinced that he was aware of his Fifth Amendment right to not incriminate himself.

Stufflebeam testified that he advised Isaacs at an interview on July 15, 1970, that Kerner and Miller were under investigation and that Judge Kerner had referred him to Isaacs for information concerning certain racetrack stock transactions. Due to Isaacs' possible involvement in these transactions, which were under criminal investigation, Stufflebeam testified that he informed Isaacs of his Fifth Amendment rights. Campbell testified that he did not recall seeing Isaacs take any notes during that interview.

Both Stufflebeam and Special Agent Witkowski testified that Isaacs was advised of his constitutional rights at the inception of the interview on December 3, 1970, and January 13, 1971.

We find from the preponderance of the evidence that Isaacs was fully informed of his Fifth Amendment rights at his first interview with Internal Revenue Special Agents. We further find that he became the subject of a criminal investigation on January 5, 1971, and that his status as the subject of a criminal investigation was never misrepresented to him. Accordingly, there is no basis for suppressing any evidence obtained from Isaacs as a result of the aforementioned interviews. The motion is denied.

## KNIGHT'S MOTION TO DISMISS THE INDICTMENT

An evidentiary hearing was granted defendant Knight on his motion to dismiss the indictment as to him on the ground that it was obtained by trick or artifice because Knight was compelled to testify before the grand jury and was misled to believe that he was not a putative defendant. From the testimony presented, several facts appear.

Knight testified before the grand jury on two occasions: March 11, 1971, and March 18, 1971. On these occasions he was accompanied by counsel. He was never given a formal *Miranda* warning.

Justice Department attorney Victor Worheide was asked by an Assistant United States Attorney-General to conduct a grand jury investigation to ascertain the true facts concerning certain allegations relevant to this case. Knight was called as a witness because he was believed to have some knowledge of relevant facts. Worheide denied that he, or anyone else to his knowledge, ever said that Knight was not a subject or target of an investigation. He said he informed Knight, and Knight's counsel, that the grand jury was conducting an exploratory investigation and was not specifically seeking an indictment. He also said that Knight's counsel informed him that Knight had been advised of his constitutional rights.

This motion is based on an allegation that the Government already had the information to which Knight testified and that he was already marked for prosecu-

tion. Internal Revenue Special Agent Stufflebeam testified that Knight did not become the subject of an investigation until June 18, 1971. The occasion for opening the investigation was the preparation of a final report on the I.R.S. investigation wherein Stufflebeam and Special Agent Witkowski drew together data they had collected in several file cabinets. As this data was studied, a pattern emerged in which Knight played a significant role. Only then did he become a subject instead of a potential witness. Worheide testified that, although he was familiar with many documents which might have shown that Knight was involved in certain transactions, the authenticity of these documents was uncertain. There were many unanswered questions about these transactions. Knight was called as a witness with the hope that he could answer some of these questions. At the time he testified there was no thought of seeking an indictment against him.

The preponderance of the evidence presented, including an *in camera* inspection of the transcript of Knight's grand jury testimony, shows that Knight has not been prejudiced by any trick or artifice relating to his testimony before the grand jury. Even if the indictment had been based on illegally obtained evidence, this is not a ground for dismissal of the indictment. See United States v. Addonizio, 313 F.Supp. 486, 495 (D.N.J.1970) aff'd 451 F.2d 49 (C.A. 3, 1971), cert. denied 405 U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812 (1972). Accordingly, the motion must be denied.

## KERNER'S MOTION RELATING TO ALLEGED BRIBERY OF A WITNESS

Defendant Kerner has moved for an evidentiary hearing concerning allegations that the United States Attorney in cooperation with the Department of Justice sought and obtained for Mrs. Marjorie L. Everett, an alleged prospective witness, a California license to become a director of the Hollywood Park Turf Club without a public hearing and despite her implication in the bribery charged in the instant indictment. He contends that the United States Attorney bribed or rewarded Mrs. Everett in violation of 18 U.S.C. Sec. 201(h). His charge appears to be based on newspaper reports that the United States Attorney went to California and met with certain state officials to persuade them not to hold a public hearing and thereby subject Mrs. Everett to cross-examination on the subject matter of the instant indictment. The sole foundation for this motion is the inference that the award of a temporary license to Mrs. Everett was a bribe intended to influence her testimony in the instant case. Such general, conjectural allegations are not sufficient to warrant an evidentiary hearing. See Cohen v. United States, 378 F.2d 751, 760–761 (C.A. 9, 1967).

The recent decision of Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) that the Government must disclose a promise of leniency made to a key witness in return for his testimony implies that suppression is not an appropriate remedy. We would expect the Court in *Giglio* not to have ordered a new trial, or alternatively to have ordered suppression of Taliento's testimony in a second trial, if the Government's reward of leniency warranted suppression. Instead the Court held that evidence of the promise was "relevant to his credibility and the jury was entitled to know of it". 405 U.S. at 155, 92 S.Ct. at 766. Even if Mrs. Everett's temporary California license was a reward for her future testimony (and we intimate no view on that question), we can discern no material difference between it and the promise of leniency in *Giglio*. Accordingly, the motion is denied.

Defendants Knight and Isaacs filed motions for the production of evidence at the evidentiary hearings held from May 31 through June 2, 1972. In the opinion of the Court these motions were disposed of at the hearing. To the extent that they were not then granted, they are denied.