PUBLISH

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

No. 98-5228

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
2/03/99
THOMAS K. KAHN
CLERK

D.C. Docket No. 97-368-CR-WJZ

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

OSLET FRANKLIN LOWERY, JR.,

Defendant-Appellee.

_____

No. 98-5229

_____

D.C. Docket No. 97-6138-CR-WJZ

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

SHELDRED BURKE, GAIL HENDERSON, a.k.a. Gail Smith,
a.k.a. Twondy G. Henderson, et al.,

Defendants-Appellees.

No. 98-5231

_____

D.C. Docket No. 98-6004-CR-WJZ

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

RANDALL WARD, TRAVIS MATHIS,

Defendants-Appellees.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(February 3, 1999)

Before TJOFLAT, BLACK and CARNES, Circuit Judges.

CARNES, Circuit Judge:

This consolidated appeal involves what has come to be known as "the Singleton issue," with a related issue involving a state court professional practice rule thrown in to boot. These defendants, in separate criminal cases, prevailed upon the district court to grant their pretrial motions to suppress the

testimony of their alleged co-conspirators. That expected testimony had been obtained through plea agreements in which the government promised to consider recommending a lighter sentence in exchange for the alleged co-conspirators' substantial assistance in the prosecution of the remaining defendants, i.e., these appellees.

The district court (the same judge in each case) held that such agreements, although commonplace in the criminal justice system, are prohibited by 18 U.S.C. § 201(c)(2), which makes it a crime to give or promise anything of value for testimony. The court also held that the agreements violated Rule 4-3.4(b) of the Florida Bar Rules of Professional Conduct. It suppressed the testimony obtained through the agreements on both grounds. We reverse.

## I. BACKGROUND

We first discuss the procedural facts of each of the three cases.

### A. THE LOWERY APPEAL

Oslet Franklin Lowery, Jr., along with his co-defendants Guillermo Mallarino, Danny Morino, and Jose Forero, was indicted for conspiracy to possess cocaine, possession of cocaine, and conspiracy to import cocaine. Only Lowery elected to proceed to trial. All four of his co-defendants, pursuant to

plea agreements with the government, entered guilty pleas on the counts of conspiracy to possess cocaine and conspiracy to import cocaine.

The plea agreements stated that each co-defendant would cooperate fully with the United States Attorney's office by providing "truthful and complete information and testimony" before the grand jury, at trial, and at any other proceeding. In exchange for their cooperation, the government agreed to dismiss the remaining charges and said it might, in its discretion, recommend a "substantial assistance" sentence reduction provided for in U.S.S.G. § 5K1.1 (1997). The agreements warned that the government would not recommend a sentence reduction or downward departure if the co-defendant provided false testimony, and that the court was not obliged to grant the government's motions in any event.

Before trial, Lowery moved to suppress the testimony of his co-defendants, relying on the interpretation of 18 U.S.C. § 201(c)(2) offered by a panel of the Tenth Circuit in United States v. Singleton, 144 F.3d 1343 (10th Cir. 1998), rev'd en banc, 1999 WL 6469 (10th Cir. Jan. 8, 1999). Lowery also relied on Rule 4-3.4(b) of the Florida Bar Rules of Professional Conduct, which states that a lawyer shall not "fabricate evidence, counsel or assist a

witness to testify falsely, or offer an inducement to a witness . . . ." The Singleton panel decision had already been vacated pending reconsideration en banc, see Singleton, 144 F.3d at 1361. Indeed, that had been done just nine days after the decision was issued. The district court recognized that Singleton was no longer the law in the Tenth Circuit, but it nonetheless relied heavily upon the reasoning of that vacated decision in granting Lowery's motion to suppress his co-defendants' testimony. See United States v. Lowery, 15 F.Supp.2d 1348 (S.D. Fla. 1998). The government timely filed this interlocutory appeal. See 18 U.S.C. § 3731.

## B. THE BURKE APPEAL

Sheldred Burke, along with Gail Henderson, Dennis Gore, Lateeal Broughton, Rodney Paramore, Samuel Collier, Randy Deonarinesingh and twelve other co-defendants, was indicted for bank fraud and conspiracy to commit bank fraud. Burke, Henderson, Gore, Broughton and Paramore elected trial by jury. The case came before the same district court judge who presided over Lowery.

Collier and Deonarinesingh reached agreements with the government, and pleaded guilty on the bank fraud count. Their plea agreements were similar to

those the government reached with the <u>Lowery</u> co-defendants, except they did not provide for the dismissal of the remaining count, nor did they contain any explicit warning that the government would not make any recommendations in the event that the co-defendants provided false testimony. These agreements did specify, however, that the co-defendants would cooperate by providing "<u>truthful</u> information and testimony." (emphasis added) Burke moved to suppress the testimony of the two cooperating co-defendants, and his motion was adopted by Henderson, Burke, Broughton and Paramore. Citing the vacated panel decision in <u>Singleton</u> and its own earlier ruling on the motion to suppress in <u>Lowery</u>, the district court granted the motion. After moving unsuccessfully for reconsideration, the government appealed.

## C. THE <u>WARD</u> APPEAL

Randall Ward, Travis Mathis, Jervaine Toote, Daniel Saunders and Celso Pinho were indicted for conspiracy to import marijuana, importation of marijuana, conspiracy to possess marijuana, and possession of marijuana. Ward and Mathis opted to exercise their right to trial.

Pursuant to plea agreements with the government, Pinho and Saunders pleaded guilty to importation of marijuana. As in the Lowery plea agreements, the government agreed to dismiss the remaining charges. The agreements were otherwise similar to the plea agreements entered into by the cooperating witnesses in Burke, that is, each one contained no specific warning against the provision of false testimony but did specify that the co-defendants would provide truthful testimony.

Mathis moved to suppress the testimony of Pinho and Saunders, and Ward adopted the motion.[1] Again adopting its ruling in Lowery, the district court granted the motion and suppressed the co-defendants' testimony. The government appealed.

## II. DISCUSSION

We review de novo the district court's interpretation of the relevant statutory provision, and its application of the law to the facts in a motion to

---

[1] Ward has been on both sides of this issue in the course of his case. Initially, he announced his intention to enter into a plea agreement providing for a sentencing recommendation in exchange for his cooperation with prosecutors. Given its earlier ruling on the Singleton issue, the district court told Ward it would not accept such an agreement, and he could either proceed to trial or enter into an agreement unconditioned upon his cooperation. Ward elected to proceed to trial. Now, he understandably contends that the type of agreement he unsuccessfully sought to obtain for himself cannot be used to obtain testimony against him. Understandable as his position is, Ward has ended up on the wrong side of the issue.

7

suppress.  See, e.g., United States v. Antonietti, 86 F.3d 206, 207-08 (11th Cir. 1996); United States v. Phipps, 81 F.3d 1056, 1058 (11th Cir. 1996).

## A. 18 U.S.C. § 201(c)(2)

As we have said, this appeal involves what has come to be known as "the Singleton issue," after the now-reversed Tenth Circuit panel decision in United States v. Singleton, 144 F.3d 1343 (10th Cir. 1998), rev'd en banc, 1999 WL 6469 (10th Cir. Jan. 8, 1999).  The  issue is whether plea agreements of the kind found in this case violate the federal prohibition against bribing witnesses contained in 18 U.S.C. § 201(c)(2).

Since the Tenth Circuit panel issued its opinion in Singleton, three circuits have rejected its holding that government plea agreements violate § 201(c)(2). See United States v. Haese, 162 F.3d 359, 366-68 (5th Cir. 1998); United States v. Ware, 161 F.3d 414, 418-25 (6th Cir. 1998); United States v. Briones, 1998 WL 863026, at *2 (9th Cir. Nov. 30, 1998); United States v. Carroll, 1998 WL 801880, at *3 n.4 (4th Cir. Nov. 19, 1998) (unpublished disposition). The Tenth Circuit itself, sitting en banc, has since reversed the panel decision.  See Singleton, 1999 WL 6469 (10th Cir. Jan. 8, 1999).  It is not the law of any circuit.

An overwhelming number of the district courts that have considered the issue have also rejected the holding of the panel decision in Singleton. See, e.g., United States v. Johnson, 1998 WL 878557, at *1-3 (E.D. Mich. Dec. 9, 1998); Hall v. United States, 1998 WL 842870, at *10-12 (E.D. Va. Dec. 1, 1998); United States v. Clark, 1998 WL 896413, at *1-3 (S.D. Ohio Nov. 30, 1998); United States v. Roque-Acosta, 1998 WL 838534, at *2-3 (D. Haw. Nov. 25, 1998); United States v. Abraham, 1998 WL 806179, at *1-7 (D. N.J. Nov. 23, 1998); United States v. White, 27 F.Supp.2d 646, 649 (E.D. N.C. 1998); United States v. Hammer, 25 F.Supp.2d 518, 535-36 (M.D. Pa. 1998); United States v. Crumpton, 23 F.Supp.2d 1218, 1218-19 (D. Colo. 1998); United States v. McGuire, 21 F.Supp.2d 1264, 1266 (D. Kan. 1998); United States v. Reid, 19 F.Supp.2d 534, 535-38 (E.D. Va. 1998); United States v. Arana, 18 F.Supp.2d 715, 716-21 (E.D. Mich. 1998); United States v. Dunlap, 17 F.Supp.2d 1183, 1184-88 (D. Colo. 1998); United States v. Guillaume, 13 F.Supp.2d 1331, 1132-35 (S.D. Fla. 1998); United States v. Eisenhardt, 10 F.Supp.2d 521, 521-22 (D. Md. 1998); United States v. Gabourel, 9 F.Supp.2d 1246, 1246-47 (D. Colo. 1998).

Of all the federal cases, reported and unreported, that we have found

dealing with this issue, only one court other than the district court in this case has agreed with the <u>Singleton</u> panel's conclusion. <u>See</u> <u>United States v. Fraguela</u>, 1998 WL 560352 (E.D. La. Aug. 27, 1998) (relying on <u>Singleton</u> and the district court decision in <u>Lowery</u>), <u>vacated on procedural grounds</u>, 1998 WL 910219 (E.D. La. Oct. 7, 1998); <u>see also</u> <u>United States v. Revis</u>, 22 F.Supp.2d 1242, 1257-64 (N.D. Okla. 1998) (agreeing with the <u>Singleton</u> panel that a plea agreement reached with federal prosecutors fell within the scope of § 201(c)(2), but concluding that the general prohibition in § 201(c)(2) must give way to other statutory provisions specifically authorizing such agreements).

In joining the cavalcade – or perhaps we should say stampede – of courts that have considered and rejected the <u>Singleton</u> panel's holding, we see no point in replowing ground that has been throughly tilled by the other courts whose decisions we have already cited. But we do wish to discuss the following point, which is not given much attention in those decisions.

The best argument that the defendants can muster in their efforts to bring government plea agreements containing cooperation clauses within the terms of 18 U.S.C. § 201(c)(2) is that the plain meaning of that statutory language requires such a reading. The statute says "Whoever..." and that word obviously

10

includes everyone, even the government. Or so the argument goes. The reason

this "best" argument is not good enough to carry the day should itself be plain.

The statutory language in question has been on the books since 1962.

See Pub. L. 87-849, § 1(a), 76 Stat. 1119, 1120 (codified at 18 U.S.C. § 201(h))

(effective Oct. 23, 1962) (current version at 18 U.S.C. § 201(c)(2)). During the

three and a half decades of its existence, what the defendants now claim is the

plain meaning of that language has not been plain to the thousands of

prosecutors, judges, and defense lawyers who have been involved with

testimony for consideration agreements over the decades. If the language of the

statute did plainly provide that it is a crime for the government to trade leniency

for testimony, the issue would have been raised early and often. It was not.

Apparently there are only three reported instances, two circuit court decisions

and one district court decision, in which anything like this issue was raised

anywhere in the country before the panel decision in Singleton had its short-

lived existence. See United States v. Blanton, 700 F.2d 298, 310-11 (6th Cir.

1983); United States v. Barrett, 505 F.2d 1091, 1100-02 (7th Cir. 1974); United

States v. Isaacs, 347 F.Supp. 763, 767 (N.D. Ill. 1972).

These type of agreements have been used extensively in federal

11

prosecutions, both long before and continually since the statutory prohibition in question was enacted. Testimony derived through them is a commonplace feature of trials. In drug cases, at least, it seems more usual than not for the testimony critical to a conviction, or the expected testimony that precipitates a guilty plea, to have stemmed directly from such an agreement. It happens every work day in federal trial courts all around this country, and it has been happening since the first day this language was put on the books thirty-six years ago. If it were plain from the statutory language that entering this type of agreement was a crime, the legions of attorneys who have represented defendants convicted over the years because of testimony dependent upon such illegal agreements would have raised the issue day in and day out in every district court in every circuit in the country. They did not. The sound of their silence is deafening. Cf. Lopez v. Monterey Cty., 119 S. Ct. 693, 702 (1999) ("the fact that courts and parties alike have routinely assumed a need for preclearance under the circumstances presented here supports our reading of § 5.").

Joining all those other courts that have rejected the reasoning and holding of the now-vacated panel decision in Singleton, we hold that agreements in

12

which the government trades sentencing recommendations or other official action or consideration for cooperation, including testimony, do not violate 18 U.S.C. § 210(c)(2).[2]

B. FLORIDA BAR RULE OF PROFESSIONAL CONDUCT 4-3.4(B)

The district court also held that the plea agreements with the cooperating co-defendants in these cases violated Rule 4-3.4(b) of the Florida Bar Rules of Professional Conduct, and the resulting testimony was due to be suppressed for that reason. The relevant portion of the Florida rule forbids lawyers from "offer[ing] an inducement to a witness . . . ."

As an initial matter, it is not clear that at the time the plea agreements in this case were negotiated, the Florida Bar Rules of Professional Conduct applied to the conduct of the United States attorneys in this case, though the local rules of the Southern District of Florida do incorporate them. See Local Rules of the United States District Court for the Southern District of Florida,

---

[2] The government also argues, but without much enthusiasm, that the same result is compelled by our holding in Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n, 117 F.3d 1328, 1335 n.2 (11th Cir. 1997), that 18 U.S.C. § 201(c)(2) applies only when the consideration is offered or given for false testimony. We need not reach that alternative ground of decision, however, because our principal holding disposes of the matter.

Rules Governing Attorney Discipline, Rule I.A (West 1998). Congress has since indicated that state rules of professional conduct should apply to the conduct of federal government attorneys. See Omnibus Consolidated and Emergency Supplemental Appropriations Act, 1999, P.L. No. 105-277, § 801(a), 112 Stat. 2681 (1998) (to be codified at 28 U.S.C. § 530(b)) ("An attorney for the Government shall be subject to State laws and rules, and local Federal court rules, governing attorneys in each State where such attorney engages in that attorney's duties, to the same extent and in the same manner as other attorneys in that State."). That congressional directive does not take effect until April 21 of this year. Since these cases will not be tried until after that date, however, we will treat the recent legislation as though it were fully effective now.

It is far from clear that Rule 4-3.4(b) prohibits conduct leading to the type of agreements at issue in this case. We seriously doubt that it does, but we need not decide that issue. Assuming for present purposes that the rule is violated when a prosecutor promises a witness some consideration regarding charges or sentencing in return for testimony, a state rule of professional conduct cannot provide an adequate basis for a federal court to suppress evidence that is otherwise admissible. Federal law, not state law, determines the admissibility

of evidence in federal court. "Although there is an important state interest in the regulation of attorneys practicing within its borders, there is a competing federal interest in the enforcement of  federal criminal law." <u>United States v. Cantor</u>, 897 F.Supp. 110, 115 (S.D. N.Y. 1995). The same principle applies to civil law as well.[3]

When it comes to the admissibility of  evidence  in federal court, the federal interest in enforcement of federal law, including  federal evidentiary rules, is  paramount. State rules of professional conduct, or state rules on any subject,   cannot trump the Federal Rules of Evidence.  <u>Cf.</u> <u>Baylson v. Disciplinary Bd. of Supreme Court of Pa.</u>, 975 F.2d 102, 111-12 (3d Cir. 1992) (refusing to apply in federal court a state ethics rule that was inconsistent with the Federal Rules of Criminal Procedure and interfered with federal grand jury practice).   Federal Rule of Evidence 402 provides:

> All relevant evidence is admissible, except as other-
> wise provided by the Constitution of the United States, by
> Act of Congress, by these rules, or by other rules prescribed

---

[3]Our decision in <u>Golden Door Jewelry</u> is not to the contrary. In that case we merely held that it was not an abuse of discretion for a district court to refuse to strike pleadings as a sanction for one party's having paid some fact witnesses to testify in contravention of this same Florida rule of professional conduct. <u>See</u> 117 F.3d at 1335 n.2. The district  court's decision to exclude the resulting testimony from evidence was not appealed, and we did not decide whether excluding that testimony was an abuse of discretion.

by the Supreme Court pursuant to statutory authority.

That is an exclusive list of the sources of authority for exclusion of evidence in federal court. State rules of professional conduct are not included in the list.[4]

Local rules of federal courts are not listed in Rule 402, either. As a result, otherwise admissible evidence cannot be excluded based upon local rules. For that reason, the Southern District of Florida's adoption of the State of Florida's professional conduct rules does not affect our analysis or the result. Acts of Congress are included in the Rule 402 list, of course, because Congress has the authority to exclude from evidence in federal courts anything it pleases, subject only to the limits placed upon it by the Constitution. The question is whether Congress' recent statutory directive that state laws and rules governing attorney conduct shall apply to federal government attorneys "to the same extent and in the same manner as other attorneys in that State," P.L. No. 105-277, § 801(a), supra, is aimed at admission of evidence in federal court. In other words, did

_____

[4] The Florida courts themselves have treated the state Rules of Professional Conduct as irrelevant to admissibility decisions. See, e.g., Suarez v. State, 481 So.2d 1201, 1206 (Fla. 1985) ("'The admissibility of evidence in a court of law . . . is normally determined by reference to relevant constitutional and statutory provisions, applicable court rules and pertinent common-law doctrines. Codes of professional conduct play no part in such decisions.'") (quoting People v. Green, 405 Mich. 273, 293-94, 274 N.W.2d 448, 454 (Mich. 1979)). That state law reinforces our decision, but is not necessary to it. Even if Florida excluded from its courts any evidence resulting from a violation of its professional conduct rules, we would still hold that those rules can have no role in determining whether evidence is admissible in federal court.

Congress intend by that enactment to turn over to state supreme courts in every state – and state legislatures, too, assuming they can also enact codes of professional conduct for attorneys – the authority to decide that otherwise admissible evidence cannot be used in federal court? We think not.

There is nothing in the language or legislative history of the Act that would support such a radical notion. Making state prescribed professional conduct rules applicable to federal attorneys is one thing. Letting those rules govern the admission of evidence in federal court is another. If Congress wants to give state courts and legislatures veto power over the admission of evidence in federal court, it will have to tell us that in plain language using clear terms.

## III. CONCLUSION

We REVERSE the district court's orders granting the motions to suppress, and REMAND for proceedings consistent with this opinion.