**UNITED STATES of America,**

v.

**Richard M. SCRUSHY, Defendant.**

No. CR–03–BE–0530S.

United States District Court,
N.D. Alabama,
Southern Division.

April 15, 2005.

Colleen Ann Conry, Mary Katherine Dimke, Nathaniel B. Edmonds, Joshua R. Hochberg, Richard C. Smith, Richard N. Wiedis, Thomas M. Gannon, Washington, DC, Tamarra Matthews Johnson, Alice H. Martin, US Attorney, US Marshal, US Probation, James D. Ingram, Birmingham, AL, for United States of America.

Jacqueline C. Smoke, Leslie V. Moore, Mavanee Routt Bear, Arthur W. Leach, Donald V. Watkins, Birmingham, AL, H. Lewis Gillis, Montgomery, AL, James W. Parkman, R. Martin Adams, Dothan, AL, for Defendant.

### MEMORANDUM OPINION AND ORDER

BOWDRE, District Judge.

This matter comes before the court on the Defendant's "Motion to Suppress De-

fendant's S.E.C. Deposition and for Exclusion of Tape–Recorded Conversations" filed on April 7, 2005 (doc. 416). The Government responded on April 8, 2005 (doc. 417).[1] The court conducted a hearing on this matter on April 11, 2005. For the reasons discussed below, the motion to suppress the S.E.C. deposition is **GRANTED**. As a consequence of the suppression of the S.E.C. testimony and the lack of any other evidence, Counts 30, 31, and 32, the perjury counts based on that testimony, will be dismissed with prejudice at the appropriate time.

The Motion for Exclusion of Tape–Recorded Conversations is **DENIED**.

## I. Motion to Suppress S.E.C. Deposition

### A. PROCEDURAL BACKGROUND

The Defendant filed this motion as a direct result of the trial testimony of Neil Seiden, Senior Accountant with the S.E.C. Department of Enforcement, Atlanta, given in open court on April 5, 2005. During Mr. Seiden's testimony, the defense and the court learned for the first time that the S.E.C. had cooperated with the United States Attorney's office in the taking of Mr. Scrushy's testimony in Birmingham, Alabama, on March 14, 2003. In fact, Government counsel had affirmatively represented to the court on April 5, 2005, the day of Mr. Seiden's testimony, that Mr. Scrushy's deposition had been moved from Atlanta to Birmingham at the request of Mr. Scrushy's attorneys and not because of any request from the U.S. Attorney's office. (See TR 9546–48; 9523–25.) These representations proved false. The court does not believe, however, that Government counsel deliberately misrepresented the facts to the court.

### B. TESTIMONY OF NEIL SEIDEN

Mr. Seiden testified on April 5, 2005, that Mr. Scrushy's deposition had been scheduled to take place on Friday March 14, 2003, in Atlanta, Georgia and until Wednesday, March 12–two days before the scheduled deposition-his office received a call from the U.S. Attorney's office that lasted fifteen to twenty minutes.[2] He further testified that, as a result of this call, the location of the deposition was changed from Atlanta to Birmingham. (TR. 9555–58.) Although Mr. Seiden testified that Mr. Scrushy's attorneys had previously requested the change, he also testified that "[t]he U.S. Attorney's office asked us—had a preference that we take Mr. Scrushy's testimony in Birmingham. . . ." (TR 9557.) This answer that revealed the U.S. Attorney's office, in fact, had input into the location of the Defendant's deposition—as defense counsel had suspected but Government counsel had explicitly denied—raised legal questions concerning the admissibility of the Defendant's S.E.C. testimony. The court recessed early and sought the guidance of legal briefs from both sides, which the court has received and reviewed, on the admissibility of that deposition.

On April 11, 2005, the court conducted a hearing on the motion where additional testimony was elicited from Mr. Seiden. Specifically, Mr. Seiden testified that on March 12, 2003, around 3:30 p.m., a conference call was held between the U.S. Attorney's office in Birmingham and the S.E.C.

---

1. The court had previously determined that a discovery problem regarding anticipated testimony from the Government's expert witness mandated a week's delay in the trial testimony in this case to allow proper evaluation of the basis for that testimony under *Daubert*.

2. For purposes of the trial testimony, the court sustained the Defendant's hearsay objection to the witness testifying as to the contents of the phone conversation.

office in Atlanta. On the call were Mr. Seiden, Ron Crawford, and Robert Lough for the S.E.C.; George Martin and Pat Meadows from the U.S. Attorney's office; and Agent Gerry Kelly of the F.B.I..

During that call, Mr. Martin revealed to the S.E.C. investigators that Weston Smith and Bill Owens had disclosed to the U.S. Attorney's office that a massive fraud had been occurring at HealthSouth since its inception that exceeded one billion dollars and that Mr. Scrushy allegedly knew of the fraud. ( MH TR[3] 11—13.) Mr. Seiden was then asked to be present at the subsequent interviews of Mr. Smith and Mr. Owens scheduled for that Friday. Mr. Seiden recounted that conversation saying, "And they said, well, we really want Neil *to participate* on Friday.... [W]e would really like Neil to sit in and *participate* in the interviews, because we need his accounting help on this." (MH TR 13, emphasis added; see also 14.) Mr. Seiden was requested to move the deposition of Mr. Scrushy to Birmingham so that he (Seiden) would be available to participate in the interviews. (MH TR 14.) Mr. Martin or Mr. Meadows suggested that Mr. Scrushy might be more comfortable on his own turf, and more inclined to testify truthfully. (MH TR 15, 18.) Mr. Martin then stated that "if [Mr. Scrushy] lies, then he will be lying in our district." (MH TR 18; see also MH TR 42) Prior to learning about the massive accounting fraud at HealthSouth in the March 12th phone conference and the request by the U.S. Attorney's office to move the deposition, the S.E.C.'s preference was to conduct the testimony in Atlanta, and Mr. Seiden, up to that point, knew of no reason to move the deposition to Birmingham. (MH TR 26–27.)

**3.** The trial transcript is numbered sequentially, but the hearings held apart from the trial per se have separate designations. The transcript of the Motions Hearing on April 11, 2005, will be referred to as "MH TR xx."

The assistant U.S. attorneys requested Mr. Seiden specifically NOT to ask Mr. Scrushy about certain areas, including cash; property, plant and equipment ("PP & E"); and accounts payable. Mr. Seiden asked whether he could inquire about income statements or earnings per share and Mr. Martin told him that he could not do so. (MH TR 16—17, 86–87.)

Mr. Seiden received directions from his supervisor that he was to honor the United States Attorney's request, and he did so. (MH TR 33.) As instructed by the U.S. Attorney's office, Mr. Seiden waited for Mr. Scrushy's attorneys to raise again their request that his deposition be moved to Birmingham because the U.S. Attorney's office did not want to let "them" know that the government knew about the fraud. (MH TR 63.) According to Mr. Seiden, "them" referred to Mr. Scrushy and his attorneys. (MH TR 60–64.) Mr. Seiden testified upon questioning by the court that, prior to the March 12, 2003, conversation with the U.S. Attorney's office, that he knew of no reason to move the deposition to Birmingham as previously requested by Mr. Scrushy's counsel. (MH TR 26–27, 100.) He stated that the deposition was moved because Mr. Scrushy's counsel pointed out that the room in Atlanta was too small; the S.E.C. wanted more time to question Mr. Scrushy because of the revelation of fraud from the U.S. Attorney's office; and because of the request from the U.S. Attorney's office. (MH TR 97, 100–102.)

Prior to Mr. Scrushy's deposition, according to Mr. Seiden, the decision had been made that Mr. Seiden would be available to participate in the interviews of Mr. Smith and Mr. Owens. Regardless of

where Mr. Scrushy's deposition was taken, Mr. Seiden testified: "I apparently was out of there one way or the other, I apparently was going to Birmingham on Thursday, one way or the other." (MH TR 66.)

At the deposition on March 14, 2003, Mr. Seiden did not advise Mr. Scrushy or his attorneys of the existence of the criminal investigation into the fraud at Health-South, or of Mr. Smith's and Mr. Owens' cooperation with the Department of Justice. (MH TR 36.) Mr. Scrushy was asked a series of questions at his deposition based on information learned in the March 12th phone call. (MH TR 28 –30; 54; 57–58.) Mr. Seiden testified that, had it not been for the March 12th call from the U.S. Attorney's office, these questions would not have been asked at this deposition. (MH TR 30.)

At the conclusion of Mr. Scrushy's deposition, Mr. Seiden and Mr. Lough went directly to the U.S. Attorney's office. (MH TR 72–73.) On the next day, Saturday, March 15, 2003, Mr. Seiden participated in the interview of Weston Smith, and on Sunday, March 16, he participated in the interview of Bill Owens. (MH TR 44–45, 78.)

The Government asserts that the SEC civil investigation and the Department of Justice criminal investigation involved different criminal conduct. However, the testimony of Mr. Seiden elicited by Government counsel reflected a serious overlap in those investigations. Both the criminal investigation and the SEC investigation concerned aspects of accounting fraud at HealthSouth. According to the Formal Order of Investigation, the SEC investigation included "any false statements or omissions in HealthSouth's quarterly reports or press releases relating to any historical revenues or future revenues." (Govt. Ex. 100–A; MH TR 89–91.)

## C. ISSUE AND HOLDING

The issue before this court is whether the Government departed from the proper administration of criminal justice in procuring the Defendant's deposition testimony. The court finds that the Government clearly so departed. The civil action and the criminal investigation improperly merged on March 12, 2003, when the U.S. Attorney's office called the S.E.C. office, gave the S.E.C. advice or "preferences" regarding the content of the deposition and its location, and recruited Neil Seiden to participate in the interviews of Bill Owens and Weston Smith in the criminal investigation.

## D. LEGAL PRINCIPLES

 Counsel for both sides agree on some of the basic principles of law that must guide the court in its decision. Federal courts have supervisory authority over the manner in which Federal agents exercise their power. *Rea v. United States*, 350 U.S. 214, 217, 76 S.Ct. 292, 100 L.Ed. 233 (1956); *United States v. Parrott*, 248 F.Supp. 196, 199 (D.D.C.1965). However, a defendant cannot succeed on a theory of a "perjury trap" when the questions relate to a *legitimate, parallel* investigation. *United States v. Waldon*, 363 F.3d 1103, 1112–13 (11th Cir.2004), *cert. denied*, —— U.S. ——, 125 S.Ct. 208, 160 L.Ed.2d 112 (2004). The question to which neither side could cite any controlling law is what distinguishes a legitimate, parallel investigation from an improper one. The court could find no controlling authority on this critical point.

 The Defendant argues that this case is closely akin to *Parrott* where the D.C. district court held that "the Government may not bring a parallel civil proceeding and avail itself of civil discovery devices to obtain evidence for subsequent criminal prosecution." *United States v.*

*Parrott,* 248 F.Supp. 196, 202 (D.D.C. 1965).[4] The salient similarity between *Parrott* and the case at bar is that in neither case did the Government inform the defendants at the time of their civil depositions by the S.E.C. that criminal prosecutions were looming that targeted them as defendants. See *Parrott,* 248 F.Supp. at 199.

The Government argues that *Parrott* is inapposite because, among other reasons, some (although apparently not all) of the defendants in that case were not represented by counsel at the civil depositions and were not warned of their constitutional rights. Instead, the Government relies on *United States v. Teyibo,* 877 F.Supp. 846 (S.D.N.Y.1995), *aff'd,* 101 F.3d 681, 1996 WL 167868 (2d Cir.1996). The Government, however, overlooks the fact that the court in *Teyibo* stated the rule of law that this court finds to be the determining principle. In that case, the court stated that "the prosecution may use evidence acquired in a civil action' in a subsequent criminal proceeding *unless* the defendant demonstrates that such use would violate his constitutional rights *or depart from the proper administration of criminal justice.*" *Id.* at 855 (citations omitted)(emphasis added).[5] This court agrees.

Perhaps the most closely analogous Eleventh Circuit case is *United States v. Handley,* 763 F.2d 1401, 1403 (11th Cir. 1985). *Handley* involved testimony obtained through separate and distinct civil cases brought by a private party that was subsequently turned over to the Government and offered in the criminal prosecution of defendants allegedly involved in a Ku Klux Klan disruption of a civil rights march. The Eleventh Circuit reversed the exclusion of the deposition testimony obtained in the civil cases, because "[t]he government had no advance notice of any of the depositions and no input into their conduct." *Handley,* 763 F.2d 1401, 1403 (11th Cir.1985).

In the instant case, the Government had both notice and direct input. Mr. Seiden received explicit directions from the U.S. Attorney's office concerning tailoring his examination of Mr. Scrushy. He was told areas to avoid to keep Mr. Scrushy in the dark regarding the criminal investigation, and Mr. Seiden specifically included questions in the examination that he would not have included had the U.S. Attorney's office not contacted the S.E.C. and discussed the criminal investigation. Further, the deposition was moved to Birmingham at the U.S. Attorney's request, thus changing the venue of the subsequent perjury charges from the Northern District of Georgia to the Northern District of Alabama.

The Government's assertion that the civil testimony should not be suppressed because the taking of the civil deposition could not be imputed to law enforcement (see Doc. 416 at 7–8) is disingenuous at best. Mr. Seiden is a member of the enforcement division of the S.E.C. His job

---

**4.** The court in *Parrott* concluded that it would have been disposed to grant an appropriate motion to suppress, but the Government had engaged in additional misconduct that justified dismissing the indictment, mooting the suppression issue.

**5.** The court in *Teyibo* concluded, under the facts of that case, that the defendant's due process rights were not violated. *Id.* at 856. *Teyibo* is factually distinguishable from the case at bar. In *Teyibo,* no advice was given by the U.S. Attorney's office to the S.E.C., regarding the conduct of any part of the civil case, and the S.E.C. was not told that a grand jury had been convened. *Id.* at 855. In the instant case, the S.E.C. was advised about aspects of the deposition, had knowledge of the criminal investigation, and its agent was recruited to participate in the criminal investigation.

is to enforce the laws that regulate securities. (TR 9484–85.) He is employed by the United States Government—the same United States Government whose Department of Justice is prosecuting this case. Further, he crossed over to the criminal investigation as a result of the phone conversation on March 12, 2003. The actions by Mr. Seiden in changing the venue of the deposition to accommodate the U.S. Attorney's office, extending the length of the deposition, and asking additional questions that otherwise would not have been asked after learning of the criminal investigation are properly imputed to the Government for purposes of this motion.

Despite the Government's assertions that the S.E.C. civil investigation was separate from and parallel to the Justice Department's criminal investigation, the facts belie that assertion. To be parallel, by definition, the separate investigations should be like the side-by-side train tracks that never intersect. By contrast, as of March 12, 2003, at 3:30 p.m., the S.E.C. civil investigation merged with the Justice Department criminal investigation. One of the reasons for that conference call was to recruit Mr. Seiden to participate in the criminal investigation. He was asked in that call to be present at and participate in the interviews of Mr. Smith and Mr. Owens. He, in fact, participated in those interviews that were originally scheduled for Friday, March 14—the same day as Mr. Scrushy's deposition—and that actually occurred in the two days following Mr. Scrushy's deposition. The need to have Mr. Seiden available to the Government was one of the reasons why Mr. Martin or Mr. Meadows stated the Government's "preference" that Mr. Scrushy's testimony be taken in Birmingham.

The Government argues that Mr. Scrushy's S.E.C. testimony did not trigger any Fifth or Sixth Amendment rights.

(See Doc. 416 at 12, 14.) In vehemently arguing that no constitutional rights were violated, the Government ignores the alternative test mentioned in the case upon which it relied so heavily at argument. The court in *Teyibo* noted that the prosecution may use evidence from a civil action in a subsequent criminal proceeding *unless* it would violate the defendant's constitutional rights "*or* depart from the proper administration of criminal justice." 877 F.Supp. at 855 (emphasis added).

Whether the Government's actions in this case "depart from the proper administration of criminal justice" may best be evaluated in light of the concerns expressed in the *Parrott* decision. The court in *Parrott* explicitly stated in its opinion that "the danger of prejudice flowing from testimony out of a defendant's mouth at a civil proceeding is even more acute when he is unaware of the pending criminal charge." 248 F.Supp. at 200. This court agrees. When a defendant *knows* that he has been charged with a crime, or that a criminal investigation has targeted him, he can take actions to prevent the providing of information in an administrative or civil proceeding that could later be used against him in the criminal case. When a defendant does not know about the criminal investigation, the danger of prejudice increases. 248 F.Supp. at 200. Failing to advise Mr. Scrushy or his attorneys about the criminal investigation of which he was a target, and that the deposition had been moved to accommodate the need of the U.S. Attorney's office to bring into the criminal investigation one of the very S.E.C. investigators who was questioning Mr. Scrushy, *and* the change of the deposition's location for venue purposes cannot be said to be in keeping with the proper administration of justice. Our justice system cannot function properly in the face of such cloak and dagger activities by those

charged with upholding the integrity of the justice system.

The Government asserts that it cannot be accused of any bad faith because it did not outright lie to Mr. Scrushy about the existence of the criminal investigation. The court cannot take such a limited view of bad faith. Mr. Seiden candidly testified that the deposition was moved because of the request of the U.S. Attorney's office, and that Mr. Martin commented that by moving the deposition to Birmingham, "if he lies, he lies in our district." (MH TR 18; see also MH TR 42.) Such a comment by a seasoned assistant U.S. attorney who certainly knew the ramifications of venue raises more than an inference that the deposition was moved so that any possible perjury charges could be brought in this district. Also the fact that these investigations were no longer parallel but were commingled and thus improper is demonstrated by Mr. Seiden's immediate involvement in the criminal investigation, although he had previously been involved in the S.E.C. civil investigation.

The interrelationship of the criminal and civil investigations formed a major component of Judge Johnson's opinion in *Securities & Exchange Commission v. Healthsouth Corp.*, 261 F.Supp.2d 1298 (N.D.Ala. 2003). Judge Johnson specifically found that "[b]ecause this is a case where the government has undoubtedly manipulated simultaneous criminal and civil proceedings, both of which it controls, 'there is a special danger that the government can effectively undermine rights that would exist in a criminal investigation by conducting a de facto criminal investigation using nominally civil means. In that special situation the risk to individuals' constitutional rights is arguably magnified.' *Sterling National Bank*, 175 F.Supp.2d [573] at 579." *Id.* at 1326. She also found that the

two cases "overlap completely" and that the "issues in both are identical." *Id.*

While Government counsel in this case argued that the criminal case involved *new* charges of criminal conduct, in examining Mr. Seiden, counsel elicited the great breadth of the S.E.C. investigation presumably to show that the questions Mr. Seiden asked Mr. Scrushy were in line with the scope of that investigation. (See MH TR 89–91, 107; Govt. Ex. 100–A, Formal Order of Investigation) The Government cannot have it both ways. Either some of the matters of the criminal investigation did overlap with the civil investigation *OR* the questions that Mr. Seiden testified he asked Mr. Scrushy based on the information he learned in the March 12 conversation were improper.

The court agrees with the conclusions expressed by Judge Johnson: as of March 12, 2003, the S.E.C. civil investigation became inescapably intertwined with the criminal investigation conducted by the Department of Justice *and* Mr. Seiden of the S.E.C. This commingling on March 12, 2003, negated the existence of parallel investigations. Because the Government manipulated the simultaneous investigations for its own purposes, including the transfer of Mr. Scrushy's deposition into this district for venue purposes, the court finds that the utilization of Mr. Scrushy's deposition in this case departs from the proper administration of justice. Therefore, the S.E.C. testimony must be excluded. The Government represented on the Record to the court that it has no evidence of perjury apart from Mr. Scrushy's S.E.C. deposition. As a result, the perjury counts, Counts 30, 31, and 32, of the Superseding Indictment based on that testimony will be dismissed at the appropriate time.

## II. Motion to Exclude Tape–Recorded Conversations

The Defendant renews his motion, previously denied, seeking to exclude the tape-recorded conversations made by Bill Owens on March 17 and 18, 2003. (See Doc. 102 and Doc. 128.) The basis of the motion is that the ·Government improperly contacted .a represented party, Mr. Scrushy, through its agent Bill Owens. to record evidence in violation of Alabama Rule of Professional Conduct 4.2. (See Doc. 416, at 4–6.) The Government concedes that it knew Mr. Scrushy was represented by counsel at the time of. the surreptitiously recorded conversations on March 17 and 18, 2003. However, it argues that the contact was proper pursuant to Department of Justice protocol.[6]

▆ The court need not-and indeed, does not—determine whether the contacts with Mr. Scrushy via its agent Mr. Owens violated Rule 4.2. Even if the contacts did constitute an ethical breach, the Eleventh Circuit law is clear that an ethical breach cannot be the basis for exclusion of evidence. See *United States v. Lowery,* 166 F.3d 1119, 1125 (11th Cir.1999). While Defendant acknowledged the holding of *Lowery,* he argues that it should not be applied to the "far graver matter of ethical breaches which involve willful interference with the attorney-client relationships." Doc. 416 at 5. Nothing in *Lowery,* however, indicates that its holding is in any way limited to less serious or only minor breaches of state ethics rules. While this court may be more persuaded by the decisions of the Second Circuit in *United States v. Hammad,* 858 F.2d 834, 840–41 (2d Cir.1988), and the Fifth· Circuit in *United States v. Killian,* 639 F.2d 206, 210

(5th Cir.1981), this court is bound to follow controlling precedent of this circuit. Therefore, the motion to exclude the tape-recorded conversations must be denied.

---

**6.** The Government submitted for in camera review the email exchange between Department of Justice counsel and its Professional Responsibility Advisory Office. Although such officer authorized the contacts at issue, the court expressly makes no determination of their propriety.